RICHARD M. McMICHAEL, Respondent, v. CHAUNCEY KILMER, Appellant.

Where a complaint is for fraud, the action cannot be maintained, on the ground of mutual mistake.

*Kemp* v. *Knickerbocker Ice Co.* (69 N. Y., 45), distinguished.

Where a party, having sold property in which another was interested, has once reported fully to the latter the amount for which he sold, and, thereafter, is presented with an account by said other party, and is threatened with immediate suit unless it is settled, in which account the amount is stated less than what he received, after a compromise and settlement of the account, he cannot be held liable for fraud, because of an omission to call attention to the error in this item of the account; he is not bound to repeat the information once given, and to insist upon swelling the account against himself.

Where an amount is paid expressly as a compromise of an account, and not because it was conceded to be due, the party receiving the payment cannot set aside and cancel a release given by him, on the ground of fraud, and yet retain the whole consideration therefor; if the release is to be canceled the parties should be put in *statu quo* as far as possible.

*McMichael* v. *Kilmer* (12 Hun, 336), reversed.

(Argued December 13, 1878; decided January 21, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, affirming a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term. (Reported below, 12 Hun, 336.)

This action was brought to recover an item of interest, alleged to have been omitted in a settlement between the parties, by means of fraud on the part of defendant.

The court found, substantially, the following facts. That on or about April 1, 1863, plaintiff and defendant entered into the agreement, in writing, by which defendant leased to plaintiff certain premises in Saratoga Springs, known as the American Hotel. Defendant agreed to make certain repairs and improvements, and reserved the privilege of selling at a sum exceeding $21,815, and sums expended for repairs and improvements, he agreeing, in case of sale, to pay to plaintiff one-half of the excess received over said sums. Defendant also agreed that no sale should be made which would interfere with plaintiff's occupation up to the then next first day of April, unless upon four months' notice. The agreement also contained a clause authorizing defendant to sell a back garden lot before he sold the hotel, accounting for the proceeds on final sale, and making a proportionate deduction from the sale. Plaintiff, under said agreement, occupied the premises therein mentioned from that time up to April 1, 1867, and paid the rent in said agreement reserved up to said April 1, 1867. On or about June 28, 1869, plaintiff and defendant had an accounting and settlement of their transactions under said agreement, and defendant paid plaintiff the sum of $1,008.85, and plaintiff executed to defendant a receipt in full of all demands. A statement of account, drawn by plaintiff, was used by the parties on said settlement. The plaintiff claimed, as a balance due him, including interest to April 1, 1869, $1,154.94. Defendant objected to certain items; also claimed to be allowed a street assessment on the premises described, paid by him; and claimed that these items, amounting in all to $358.61, should be deducted from said amount claimed by plaintiff, and that the sum justly due the plaintiff was $796.35. Said parties finally settled said account at the sum above mentioned. In said statement, and in the settlement, defendant was charged with $30,000 as the purchase-price he received for the said premises, as received April 1, 1867. In fact defendant, on November 8, 1866, executed a deed of said premises for $30,000, and interest from

that date, to one Wm. H. McCaffrey, the possession of the
premises, however, not being given, and being reserved until
April 1, 1867; up to which time plaintiff occupied said
premises under said agreement, and paid rent therefor.
The court further found, "that on said settlement defend-
ant, instead of being charged with $30,000 as the purchase-
price of said hotel and premises, received April 1, 1867,
should have been charged with $30,828, April 1, 1867;
that one-half of said sum of $828, to wit, $414, and inter-
est from April 1, 1867, plaintiff was justly entitled to
be allowed and paid on said settlement, and was not; plain-
tiff, at the time of said settlement and the execution of said
receipt, believed that defendant had received for said prem-
ises $30,000 on April 1, 1867, only; that the said item of
$828 was omitted from the settlement, by reason of the fact
that plaintiff did not know that the defendant received the
same, and by reason of the suppression of the fact by the
defendant that he had received it, the defendant well know-
ing that the plaintiff did not know the fact; and the defend-
ant remaining silent with intent to procure a receipt dis-
charging him from liability on account of it."

The court found that the suppression of the fact was a
fraud, and that plaintiff was entitled to recover said sum of
$414, with interest.    Judgment was rendered accordingly.

The further facts appear in the opinion.

A. Pond, for appellant.    The payment by defendant and
the receipt by plaintiff operated as an accord and satisfaction
upon a compromise settlement, and entirely satisfied and
extinguished all claims and demands on the part of plaintiff
against defendant, including the claim made in this action.
(Vedder v. Vedder, 1 Den., 257; Palmerton v. Huxford, 4
id., 166; Bull v. Bull, 43 Conn., 455; Taylor v. Nussbaum,
2 Duer, 302; Neary v. Bostwick, 2 Hilt., 514, 519; Penn.
R. R. v. Shay, 82 Penn., 190; Pierce v. Pierce, 25 Barb.,
243, 252; Farmers' Bank v. Blair, 44 id., 641, 652; Coon
v. Knap, 4 Seld., 402; Russell v. Cook, 3 Hill, 504; Taplen

v. *Wilson*, 4 Hun, 244, 248.) Plaintiff and defendant occupied the position of debtor and creditor, and no trust relation existed between them. (10 Wend., 436; 6 Barb., 108; *Butterworth* v. *Bliss*, 52 id., 430, 435; *Mackellar* v. *Wallace*, 26 Eng. L. & Eq., 65, 68; *Nelson* v. *Luling*, 62 N. Y., 645; *Penn. R. R. Co.* v. *Shay*, 82 Penn., 190.) Defendant owed plaintiff no duty to assist him in the threatened law suit by giving him or his attorney any information in respect thereto. (*Shank* v. *Shoemaker*, 18 N. Y., 489, 490; *Pulver* v. *Harris*, 52 id., 73, 77; *Gage* v. *Parker*, 25 Barb., 141, 146; 26 Eng. L. & Eq., 62, 65, 68; *Flower* v. *Luce*, 59 N. Y., 610; *Smith* v. *G. F. Ins. Co.*, 62 id., 85, 87.) Even if defendant had committed actual fraud plaintiff's only remedy was to rescind the settlement *in toto*. (*Bisbee* v. *Ham*, 47 Maine, 543; *Hogan* v. *Weyer*, 5 Hill, 389; *Degraw* v. *Elmore*, 50 N. Y., 1–3; *Pullman* v. *Alley*, 53 id., 637; *Cobb* v. *Fenton*, 46 id., 533; *Vernol* v. *Vernol*, 63 id., 45, 47; *Lester* v. *Un. Man. Co.*, 1 Hun, 288; *Bedell* v. *Bedell*, 3 id., 580; *Luddington* v. *Miller*, 38 Sup. Ct., 478; 6 J. & S., 478; *Bull* v. *Bull*, 43 Conn., 465; *Lee* v. *Lon. and York R. W. Co.*, 6 Chan. Ap. [L. R.], 432.)

*John R. Putnam*, for respondent. Defendant's failure to reveal to plaintiff that he had collected the interest was fraudulent. (Story Eq. J., §§ 187, 217–218–220; *Bench* v. *Sheldon*, 14 Barb., 72; *Brown* v. *Montgomery*, 20 N. Y., 287; *Welles* v. *Yates*, 44 id., 525–528–529; *Smith* v. *Mackin*, 4 Lans., 44–46; *Dambmann* v. *Shulting*, 12 Hun, 1–6.) The relations existing between plaintiff and defendant imposed upon the latter the duty of explaining to plaintiff the amount he had received for the hotel. (Story's Eq., §§ 187, 217, 218, 219, 220, 323; *Pulver* v. *Harris*, 52 N. Y., 73–77; *Gage* v. *Parker*, 25 Barb., 141–146.) Plaintiff is not estopped by the settlement and his receipt, and may recover the amount omitted by mistake from the settlement. (*Coon* v. *Knap*, 4 Seld., 402; *Russell* v. *Cook*, 3 Hill, 504; *Palmerton* v. *Huxford*, 4 Denio, 166; *Green* v. *Rochester Iron*

*Mfg. Co.*, 1 N. Y. S. C. R., 5; *Veeder* v. *Veeder*, 1 Den., 257.)   An accord and satisfaction obtained by fraud or mutual mistake is no bar to an action.   (*Stafford* v. *Bacon*, 1 Hill, 535; *Dolsen* v. *Arnold*, 10 How., 531; *Bloodgood* v. *Sears*, 64 Barb., 71–76; *Wells* v. *Yates*, 44 N. Y., 525; *Rheel* v. *Hicks*, 25 N. Y., 289.)   If this were simply a case of mutual mistake of the parties making a settlement as to the amount of the purchase-price, the plaintiff is equally entitled to recover.   (*Caulkins* v. *Griswold*, 5 Wkly. Dig., 134; 8 Cowen, 195; *Kemp* v. *Knickerbocker Ice Co.*, 69 N. Y., 57.)   It was not necessary for plaintiff to pay back or tender to defendant the amount he received on the settlement in order to maintain this action.   (*Allerton* v. *Allerton*, 50 N. Y., 620; *Waring* v. *Mason*, 18 Wend., 425–435; *Boorman* v. *Jenkins*, 12 id., 566–576.)

Hand, J.* The basis of this recovery, as stated in the findings of the judge before whom the cause was tried, is the fraud of the defendant in the compromise between him and the plaintiff, in suppressing the fact that he had received $30,828 on April 1, 1867, instead of the $30,000 with which he was charged in the itemized bill presented to him by the plaintiff; and in maintaining silence as to that fact, with intent to procure a receipt in full from the plaintiff, well knowing that the plaintiff did not know such fact, when he presented his account.

The complaint is for fraud, and the court below, when the cause first came before them, were probably right in holding that the action could not be maintained on the ground of mutual mistake. (*Barnes* v. *Quigley*, 59 N. Y., 265; *Ross* v. *Mather*, 51 id., 108; *Elwood* v. *Gardner*, 45 id., 349.) What was said in *Kemp* v. *Knickerbocker Ice Co.* (69 N. Y., 45), hardly affects the rule, as the court below there found the fraud, and this court merely refused to disturb that finding.

It is clear that the recovery cannot be sustained as a reopening and a readjustment of the accounts between the

* This opinion written by Hand, J., while a member of the court, was adopted by the court.

parties, as this would be a still further departure from the pleadings ; and indeed there was no attempt to consider or adjust any of the items, except the amount due the plaintiff upon the sale of the hotel.

There was a conflict of evidence as to any false representations ; and as the judge did not make any finding upon this point, we can not here attempt to decide upon that conflict.

The case therefore depends upon the question whether there is any evidence authorizing the finding of fraud, by suppression or concealment of a fact ; and, of course, as involved in that question, whether any such fact existed, i. e.: the receipt by the defendant on the 1st of April, 1867, of $828, to one-half of which, as proceeds of the sale, the plaintiff was entitled.

After careful and repeated scrutiny of the evidence in this case, we have been unable to discover anything authorizing either the finding of the receipt of such sum by the defendant or, if it were received, any fraud by the defendant, in his or his attorney's silence at the settlement with regard to it.

The third answer explicitly denies that the defendant ever stipulated for any such sum, or that there was any error in the settlement.    No evidence whatever directly on the subject was given on the trial.    But it does appear from the allegations of the complaint, admissions of the third answer and the testimony of the defendant, that the property was sold on the 8th November, 1866, for $30,000, and that instead of insisting upon the cash, he took a bond and mortgage from the purchaser for the whole amount.    When this was payable is nowhere shown ; but it is proved that it was not paid two years after, when this settlement between the plaintiff and defendant took place, as a suit was then pending for foreclosure ; and an answer for the purchaser, put in by the agent of the plaintiff in that settlement, sets up that the agreement in fact was that interest should not be computed or commence to run until the 1st of April, 1867, and that the bond and mortgage drew interest from its date by mistake.    This would certainly tend to show that neither principal nor inter-

est was payable upon the 1st of April, 1867. Assuming the fact to be that the whole purchase-money was secured by mortgage drawing interest from date, 8th November, 1866, until paid, it is difficult to see what right the plaintiff had to the interest on the $30,000 for the four months previous to April, 1867, any more than for four months or four years subsequent to that date, or the whole time the mortgage had to run, if for ten years. The sale on the 8th November, 1866, for $30,000 entitled the plaintiff to his half of the excess of that sum over $21,815 and the improvements, immediately. This half of the excess is computed to be $1,929. The plaintiff could have demanded that sum at once, if paid by the purchaser, and perhaps, whether paid or not, as soon as the defendant delivered the deed. If it be said that the stipulation of defendant was to pay him this excess only when "received;" and that if he took a bond and mortgage, the plaintiff must wait until that bond and mortgage was paid, this would make no difference with the amount. If the sum was paid at the time of the sale, the plaintiff was entitled to the half excess then. If, either by his consent or otherwise, this was secured by obligation of the purchaser instead of being paid, he would still be entitled to *it* when paid, and the interest *thereon;* but his interest would be only on *his part,*— that is, the $1,929.00,— and not on any part of the rest of the purchase-money which belonged to the defendant. It seems clearly erroneous, therefore, to award to him the interest for four months or any other period, on one-half of the $30,000, instead of one-half of the excess.

It has been suggested, however, that although the plaintiff has no claim upon the interest on $30,000, as such, yet the defendant's sale on the 8th November, 1866, was not merely for $30,000, but for that sum and the use or rent of the premises in addition thereto, until the 1st of April, 1867; that this rent is part of the proceeds of sale or price of the property, and to be added to the excess to be divided with the plaintiff. It might be answered that no such claim is made in the pleadings, and that there was no finding or

evidence to show exactly the amount of such rent. But assuming the rent for the four months and twenty-two days to be ascertainable by computation from the contract and the quarterly rent stated in the account, and to happen to be very nearly the amount of the judgment, as rendered, and that it may be considered as covered by it, I still am convinced, that, although the suggestion is plausible, it is not sound. An examination of the contract demonstrates that the term of the plaintiff in the premises, for four months or to the first of April succeeding the sale, as the case might be, was not and could not, by the terms of the agreement, be sold, and hence, of course, formed no part of the price to be divided ; that the thing sold by the defendant was the title to the property and possession after the succeeding 1st of April, 1867, or four months' notice, and for this he received but $30,000 on the day of sale. The term till the 1st of April, 1867, or four months after notice, was not by the contract to be the subject of sale, and was not to be affected in any way by it. The plaintiff had the occupation and the defendant the rent for that term irrevocably. The former could sell or assign this four months' term for anything he could get, and would certainly not be obliged to account to the defendant for what he received, as any part of the avails of the property to be divided. So the defendant could assign his interest in the term and the right to receive the rent, and as certainly would not be liable to divide what he obtained with the plaintiff. If the defendant had, on the 8th November, sold his right to receive the rent until the ensuing 1st April, the plaintiff would clearly have no right to one-half of the avails of such sale ; and it would be absurd to say that he acquired such right because subsequently, on the 1st April, 1867, for instance, the defendant should sell the property, under this agreement, for $30,000. But if so, then certainly if he sells the property to be sold and keeps his rent, he is not liable to divide such rent. In fact, the case is precisely as if the four months' occupation were, by the agreement between the parties, reserved to the defendant

himself instead of to him by his tenant the plaintiff. But under a bargain to divide what he should receive for the premises, subject to a four months' occupation by himself, it is manifest, he need not account for the benefit of such occupation, either by himself or his tenant. It would not be the subject of the sale, and no part of the price to be divided.

This view is corroborated by the stipulation as to the back garden, which could be sold absolutely; and, as to that, the four months' term would, therefore, be a part of the thing to be sold and the price divided. Hence, it is expressly stipulated that, if such a sale is made, the rent is to cease *pro rata* and the price become a fund to be divided when the rest of the property is sold. Upon the maxim, *expressio unius exclusio alterius*, if the whole is sold the four months' term in the hotel is no part of the thing to be sold, and its reservation not to be considered a portion of the price.

My conclusion is that, upon the most favorable view for the plaintiff, he was not entitled, on the 1st of April, 1867, to anything more than $1,929.26 and interest thereon from the 8th November, 1866. He has received the $1,929.26 in the settlement, and cannot, of course, sustain this judgment for the $53.26 of interest thereon merely.

But even if I were wrong in this construction, and the half of the four months' rent should be added, it is impossible, it seems to me, to charge upon the defendant a fraud, in not insisting, against the plaintiff's own proposed account and computation, that this was the proper view. When the legal construction of a contract is so puzzling that it is even now doubtful, upon careful scrutiny, whether the plaintiff's item, as proposed, was not substantially correct, the defendant can hardly be charged with fraud, in suppressing, even in his own interest, his dissent from the correctness of that item, although it be assumed that he or his attorney did not, in good faith, regard it as correct.

If, therefore, the plaintiff was entitled to the half of $828, more than he obtained upon the settlement, we are unable,

as has already been said, to discover any evidence authorizing the imputation of fraud by suppression, and in this we agree with the General Term in their first opinion. It may be conceded that it was the duty of the defendant, in the first instance, to state truly to the plaintiff the amount for which he had sold, and to correct any mistake of the plaintiff, in that respect. But if he had once done so fully, and two years after he was presented with an account by the agent of the plaintiff (who also, once at least, knew all the facts), and was threatened with immediate suit by that agent, unless he paid the account, and thereafter a compromise was effected between such agent and his own attorney, on such compromise neither he nor his attorney were bound to insist on swelling the account against himself. (*Shank* v. *Shoemaker*, 18 N. Y., 489; *Livingston* v. *Peru Iron Co.*, 2 Paige, 390 ; *Dolman* v. *Noakes*, 22 Beav., 402; *Abbott* v. *Sworder*, 4 De G. & Sm., 448.) The defendant testifies that soon after the sale he saw the plaintiff and told him all about it ; the price, and that he had taken a mortgage for the whole amount, with interest from date. This is not denied by the plaintiff, although subsequently called. He admits that the defendant told him of the mortgage (although he had at first said he was not informed of the mortgage), but the recollection of the conversation is not distinct, and he could not state it. But again, at the time of the settlement, a suit was pending to foreclose this very mortgage, and the same attorney who acted as the agent of the plaintiff on the settlement had put in an answer in that suit himself a year before for the purchaser, setting up the exact terms of the mortgage, and claiming that they were a mistake. And I find no contradiction of the defendant's testimony that he, just before the settlement, reminded this agent of the "trouble" about the interest on the mortgage. When, therefore, the defendant's attorney met this agent to negotiate, and this compromise was effected, he may well have supposed that the facts about this sale and mortgage were known to the other negotiator.

It is not necessary to hold that this knowledge of Shoudy, or notice to him, was the knowledge of or notice to the plaintiff, but as bearing upon the question of the fraud, or suppression of facts by defendant's agent, in making the compromise, such knowledge seems conclusive. The plaintiff had once been informed of the facts of the sale, and the agent whom he had sent to demand the payment had known all about them. It is not, in my judgment, legal fraud for the defendant, under these circumstances, when he is sought with a demand for the payment of a certain sum immediately and a threat of suit, in case of his refusal, in compromising the claim, not to repeat the information once given. The parties were then certainly at "arm's length," in the phrase of the authorities.

It is not now necessary to decide whether such a settlement might not be reopened, and manifest errors in the accounts corrected, in the proper action. It is enough to say that fraud cannot be predicated of such a transaction.

My impression is also that the objection insisted upon by the defendant, with regard to the restoration of the sum paid, is fatal to this recovery. The money was paid expressly as a compromise, and not because it was conceded to be due. The defendant, to obtain his receipt in full, waived claims against the plaintiff which, so far as appears, were valid. The plaintiff cannot set aside and cancel the release he gave, on the ground of fraud, and yet retain the whole consideration he received for that document. If the release is to be canceled, the parties should be put in *statu quo*, as far as practicable : (*Bruce* v. *Davenport*, 1 Abb. Ct. App. Decis., 233). It cannot be said that the plaintiff was damaged to the extent of the half of the $828, by the fraud, for there is no evidence that he would have procured, or was entitled to the $1,008, in addition to such half, from the defendant, or that the defendant would have consented to pay it, had the interest been insisted upon, and there had been no concealment.

It is remarked by the learned judge who tried the cause that if the defendant has, in the perpetration of fraud upon

the plaintiff, and for the purpose of consummating it, waived his legal rights, it is his own fault, and he must suffer; but the same reasoning would justify, in an action for deceit as to quality of goods sold, a recovery by the purchaser of the whole price paid, without any offer to return the property or allowance for its actual value.

The judgment must be reversed and new trial ordered, costs to abide the event.

All concur; RAPALLO, ANDREWS and EARL, JJ., concurring in result.

Judgment reversed.

