BENJAMIN GOULD, Appellant, *v.* THE CAYUGA COUNTY NA-
TIONAL BANK et al., Respondents.

One who seeks to rescind a compromise of a disputed claim on the ground
of fraud must promptly, on the discovery of the fraud, restore or offer to
restore to the other party whatever he has received by virtue of it, if of
any value ; the tender must be without qualifications or conditions.

In an action at law upon the original claim, plaintiff must show that he re-
scinded the fraudulent compromise prior to the commencement of the
action ; if no rescission is shown a final determination by the court that
plaintiff was entitled to more than the sum paid, is no answer to the ob-
jection.

*It seems* that the rule is different where the compromise was of an undis-
puted claim.

*It seems* also that an equitable action to rescind may be brought without
such restoration, the plaintiff offering, in his complaint, to restore, if not
entitled to retain what he has received.

*It seems* also that the party may retain what he has received and sue to re-
cover damages for the fraud.

Plaintiff having a claim against defendant, the C. C. N. Bank, for certain
U. S. bonds loaned to it, which the bank claimed to have returned, the
parties entered into a compromise by which the bank agreed to, and did,
pay to plaintiff $25,000 in full satisfaction of the claim. In an action
upon the original claim, defendant set up the compromise as a defense ;
also a return of the bonds. Plaintiff thereupon proved that the compro-
mise was induced by fraud. It appeared that the fraud was discovered
prior to the commencement of the action. At the close of the evidence
on the trial, and after defendants had taken the objection that plaintiff
had not returned or offered to return the money paid, he paid into court
the amount thereof, with interest, with a statement that the deposit was
made upon the conditions that it was to be retained until final judg-
ment, and to be restored to plaintiff unless the judgment determined that
the bank was entitled to it, in which case it should be awarded to the
bank. *Held,* that the tender was insufficient ; and that plaintiff was not
entitled to recover against the bank.

Defendant B. was surety for the bank ; the action was commenced more
than ten years after the cause of action accrued as against him ; the in-
terest upon the bonds had, however, been paid to plaintiff by the cashier
of the bank, on its behalf, up to about four years. B. at one time asked
the cashier of the bank "if the interest upon the bonds had been kept
up," and was answered that it had. *Held,* that, conceding the defense
of the compromise would not inure to the benefit of B., the statute of
limitations was a bar to the action as to him ; that payment of interest

could only keep the obligation in life upon proof that he paid it or that it was paid on his behalf by some one authorized so to do.

(Argued April 21, 1881; decided October 4, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made the second Tuesday of June, 1880, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial without a jury. (Reported below, 23 Hun, 293.)

The nature of the action and the facts appear sufficiently in the opinion.

*George F. Comstock* for appellant. A party who claims to go behind a contract, and recover a right in opposition to it, on the ground of fraud, or other ground, must first restore what he received through the contract. (49 N. Y. 623; 61 id. 145; 13 Barb. 641; 21 id. 82; 32 id. 171.) There is no point of view in which the plaintiff has or ever had any act to perform in relation to the collateral trust. The judgment will protect all rights in the trust fund. (*Allerton* v. *Allerton*, 50 N. Y. 670; *Mason* v. *Bovet*, 1 Denio, 69; *Hammond* v. *Pennock*, 61 N. Y. 145.) The action is not barred as to the defendant Beardsley by the statute of limitations. (*Harper* v. *Fairly*, 53 N. Y. 444, 445.)

*W. F. Cogswell* for respondents. The paper executed to the bank by plaintiff, dated March 12, 1873, is a full and complete discharge of the cause of action asserted against it. (*McCrea* v. *Purmort*, 16 Wend. 460, 474; *Stearns* v. *Tappan*, 5 Duer, 294.) To sustain an action for fraud, founded upon representations made by defendant, it must be made to appear that he believed, or had reason to believe at the time he made them, that the representations were false, or that without knowledge he assumed or intended to convey the impression that he had actual knowledge of their truth, and that plaintiff relied upon them to his injury. (*Wakeman* v. *Daily*, 51 N. Y. 27; *Myer*

v. *Amidon*, 45 id. 169; *Oberlander* v. *Spiess*, id. 175; *Craig* v. *Ward*, 3 Keyes, 387.) The contention on the part of the plaintiff is an attempt to hold the defendants liable for a fraud without the necessary element of willful falsehood. (*Oberlander* v. *Spiess*, 45 N. Y. 177.) The plaintiff cannot set up that the release was void for fraud, because he had not returned the consideration for which that release was given. (1 Story on Cont., § 623 [5th ed.]; *Mason* v. *Bovet*, 1 Denio, 69; *Dubois* v. *Hermance*, 56 N. Y. 673; *Jennings* v. *Gage*, 13 Ill. 610; *Tisdale* v. *Buckmore*, 33 Me. 461; *Coche* v. *Rucks*, 34 Miss. 105; *Evans* v. *Gale*, 17 N. Y. 537; Kerr on Fraud, 327 [Am. ed.]) The plaintiff cannot assail this release for the still further reason that the bank cannot be restored to the condition of things as they stood at the time it was made. (2 Kent, 480; Story on Cont., § 623; *Clark* v. *Dickinson*, Ellis, Blackburne & Ellis, 148; *Chance* v. *Comrs. of Clay Co.*, 5 Black [Ind.], 441; *Pattus* v. *Roberts*, 6 Ala. 811; *Buell* v. *Tale*, 8 Blackf. 55; *Calhone* v. *Davis*, 3 Ind. 532; *Lattea* v. *Hind* 19 id. 93; *McGuire* v. *Callahan*, id. 128; *Griffith* v. *F' County Bank*, 9 Gill. & J. 424; *Conner* v. *Henderson*, 1o Mass. 319; *Brown* v. *Wither*, 10 Ohio, 142; *Hammond* v. *Buckmaster*, 22 Vt. 375; *Moore* v. *Bare*, 11 Iowa, 198; *Potter* v. *Titcomb*, 22 Me. 800.)

EARL, J. This action was brought to recover damages for the alleged breach of an agreement / ade by the defendants to return to the plaintiff certain United States bonds loaned by him to the bank, in June, 1865, the defendant Beardsley being surety for the bank. The defendants, in their answer, interposed several defenses, among which were the statute of limitations and the return of the bonds to the plaintiff. They also set up that, before the commencement of the action, the plaintiff called upon the bank for the return of the bonds, claiming that they had not been returned to him, and that the defendants denied plaintiff's claim, alleging and claiming that the bonds had been returned to him by the bank, and that thereupon the parties entered into a compromise agreement, whereby the bank agreed to pay the plaintiff, in satisfaction of his claim

against it, the sum of $25,000, and that it paid, and plaintiff accepted, that sum in satisfaction of his claim against it for the bonds loaned.

Upon the trial the plaintiff proved the loan of the bonds and that they had not been returned to him, and then rested his case. The defendants then proved the compromise agreement, and the payment of the $25,000, and rested their case. The plaintiff then gave evidence tending to show that he was induced to enter into the compromise agreement by the fraud of the defendants. The plaintiff did not, prior to the commencement of the action, return or offer to return to the bank the $25,000 paid by it. After the defendants had at the trial taken the objection that the plaintiff had not returned or offered to return the money, and at the close of the evidence, the plaintiff paid into court the sum of $25,000, with the interest thereon from the time of payment, and at the same time, as explanatory of the payment, filed a paper of which the following is a copy, to wit : "The plaintiff now deposits in the court with the clerk thereof the sum of $35,159.72, a sum equal to a certain sum of $25,000, which was paid to the plaintiff by the defendant The Cayuga County National Bank, or by Josiah N. Starin, the 12th day of March, 1873, as set forth in a certain receipt or instrument of writing of that date mentioned in the pleadings and proofs in this action, and the interest upon such sum until the 1st day of January, 1879. The said deposit being made under the following conditions :.

" '*First.* The said deposit shall remain in the custody of the court and not paid to either party until final judgment shall be rendered in such action. The court by rendering such judgment or by its action under the judgment shall restore such deposit to the plaintiff unless it shall be determined in and by such final judgment that the defendant, The Cayuga County National Bank, ought to recover such, the said sum of $25,000, so paid to the plaintiff as aforesaid, in which case the sum of money herein mentioned shall be awarded to the defendant, The Cayuga County National Bank.'

"ROLLIN TRACY, *Plaintiff's Attorney.*"

· This deposit was made more than five years after the payment of the money to the plaintiff, more than two years after the plaintiff had discovered the fraud, and long after the commencement of this action. The trial court found that the loan was made, that the bonds had not been returned or replaced, that the compromise agreement was made, and that the plaintiff was induced to enter into it by the fraud of the defendants; but it decided that the plaintiff could not recover because he did not before the commencement of the action return or offer to return the $25,000 paid to him under the compromise agreement, and therefore it dismissed his complaint. The same view was taken of the case at the General Term, and as we are of opinion that that view was correct, we will confine our attention now to its consideration.

The compromise agreement, unless annulled, is an absolute bar to this action. It is a general rule laid down in the text-books and reported cases that a party who seeks to rescind a contract into which he has been induced to enter by fraud must restore to the other party whatever he has obtained by virtue of the contract. (*Cobb* v. *Hatfield*, 46 N. Y. 533.) He cannot retain any thing he received under the contract and yet proceed in disaffirmance thereof. The rule is laid down in *Evans* v. *Gale* (17 N. H. 573), as follows: "If one has been induced to make a contract to pay money or to deliver any thing, by such means that he is entitled to rescind the transaction, he must, in order to do so, first restore to the other party whatever may have been received in exchange for the money or other thing he seeks to recover back, and to which he would become entitled as his own property immediately upon the rescission of the act, whose proper effect would have been to vest it in the other party." The reason of the rule, as stated by Chief Justice SHAW in *Thayer* v. *Turner* (8 Metc. 550), is that "the plaintiff, as far as it is in his power, shall put the defendant in *statu quo*, by restoring and revesting his former property in him, without putting him to an action to recover it, before he can exercise his own right to take back the property sold, or bring an action for it." And as stated

by Chief Justice Parsons in *Kimball* v. *Cunningham* (4 Mass. 502), "the vendee shall not compel even the fraudulent seller to an action to recover back the property he has parted with in the exchange." The effect of the avoidance of an agreement on the ground of fraud is to place the parties in the same position as if it had never been made; and all rights which are transferred, released or created by the agreement are revested, restored or discharged by the avoidance.

Here the $25,000 was not paid upon any debt acknowledged to be due the plaintiff from the bank. The bank denied the claim, but paid the money to settle the dispute, and hence the plaintiff obtained it solely by virtue of the compromise agreement.

But the claim of the plaintiff is that because it was finally determined by the court that the sum paid the plaintiff and much more was due to him from the bank, the fact that he did not return the money furnished no defense to the action. It is believed, notwithstanding the earnest and able argument of the learned counsel for the appellant, that this claim, under the circumstances of this case, has no sound basis of principle or authority to rest on.

The defendants set up two defenses, either one of which would have defeated the plaintiff, to wit: the compromise and the return of the bonds. If plaintiff had tendered a return of the money, the bank could have taken it and the compromise agreement would thus have been wiped out; but yet it could have defended the action by showing a return of the bonds. If it failed to show such return, the plaintiff would have recovered the full value of his bonds. If it showed a return, it would have been justly entitled to the money repaid. The receipt by the bank of the money tendered would have placed the parties where they were before the compromise was made, and that is what the law requires, when it can be done, to make an effectual rescission.

The fact that the bank failed to show a return of the bonds is a mere accident of this case. It might have shown it, and if it had, then the plaintiff would have had his bonds and also

the money paid. The plaintiff, but for the tender made at the trial, of which I will speak hereafter, was intrenched in a very safe position. If he failed to defeat the compromise he would still retain the $25,000. If he defeated the compromise, then he would retain that, and recover also the balance due him for the bonds. He cannot thus put upon the defendant the chance of losing the $25,000, or of recovering the same of the plaintiff by action.

If there had been no dispute as to the amount due the plaintiff, if the sole defense of the defendants had been the compromise, and if at least the $25,000 was indisputably due the plaintiff, then it would have been unnecessary for the plaintiff to tender or return to the bank the money paid, because in any view of the case so much would have been due the plaintiff; by virtue of the compromise, if that was upheld, and if that was vacated, then in consequence of the original liability. It was in principle so held in *Pierce* v. *Wood* (3 Foster [N. H.], 519). It was there decided that if a person effect a compromise of his debts by fraudulent representations and procure a discharge of the same by paying a per cent thereon, and an action be brought to recover the balance, on the ground of fraud, it is not necessary, as preliminary to the right of recovery, that the plaintiff repay or offer to repay the per cent received, and that the doctrine of the rescission of contracts does not apply to such a case. In that case, unlike this, the plaintiff was entitled to the per cent paid him, whether he succeeded in the action or not. Here, if the defendants established that the bonds had been returned, the plaintiff would not be entitled to retain the $25,000.

If what one obtains by a fraudulent contract is absolutely of no value whatever, he need not return it before disaffirming the contract. (*Thurston* v. *Blanchard*, 22 Pick. 18; *Thayer* v. *Turner*, *supra*.) The law does not require an idle ceremony.

In *Stevens* v. *Austin* (1 Metc. 557), B. received the promissory note of A. for goods which A. fraudulently obtained of him and sold to C., who had knowledge of the fraud; and it

was held that B. might maintain an action of trover for the goods against C. without restoring the notes to A., and for the reason that B. had received nothing from C., and it was a matter of no consequence to C. whether or not the note was restored to A.

I have now called attention to decisions which illustrate all the cases in which, so far as I have discovered, a party may maintain an action to recover what he has parted with upon a contract into which he was induced to enter by fraud, without restoring to the defendant what he obtained from him by virtue of the contract; and it will be seen that they rest upon principles not applicable to this case.

When must the rescission and repudiation of the fraudulent contract be made to enable the defrauded party to recover what he has parted with under the contract? Promptly upon the discovery of the fraud. A return of the property which he obtained under the contract is part of the act of rescission. So long as the contract remains unrescinded it binds both parties, and except in the classes of cases above mentioned, neither party can sue in an action based upon the rescission. The defrauded party has no cause of action for the property or consideration parted with or released under the fraudulent contract until the contract has been rescinded. Hence, in all actions of trover or replevin to recover the property parted with, and in all actions based solely upon the original relations between the parties, the plaintiff must show that he rescinded the fraudulent contract before the commencement of the action; in other words, that he had a cause of action when he commenced his action. It was so held in *Tisdale* v. *Buckmore* (33 Me. 461), *Stevens* v. *Hyde* (32 Barb. 171) and cases above cited.

In addition to the cases above cited I have found but one other exception to this rule, and that is in the case where a vendor upon a sale induced by fraud has taken the vendee's own note. In such a case the vendor may repudiate the contract and bring his action to recover the property sold without first surrendering the note. (*Thurston* v. *Blanchard*, 22 Pick. 18; *Nichols* v.

*Michael*, 23 N. Y. 264.) This is so because· as between the parties the note is not property, but a mere promise to pay which is avoided by the rescission of the contract. It is of no value to the vendee, and needs to be surrendered to him at the trial, merely because it might otherwise be used to his detriment.

But the defrauded party need not rescind and sue in an action at law for the consideration parted with upon the fraudulent contract. He may bring an action in equity to rescind the contract, and in that action may have full relief. Such an ac-·. tion does not proceed as upon a rescission, but proceeds for a rescission. In such a case it is sufficient for the plaintiff to offer in his complaint to restore to the defendant what he has received, and the rights of the parties can be fully regulated and protected in the judgment to be entered. Such was the case of *Allerton* v. *Allerton* (50 N. Y. 670).

If this had been an action in equity to rescind the contract, the court could have done equity between the parties and so moulded its judgment as to accomplish that result. It could, if needful, have brought into the litigation matters pertaining to the trust created by Starin for plaintiff's benefit, and to that end could have ordered that Starin and the trustee be made parties. This action was brought as an action at law, no mention being made in the complaint of the compromise agreement or of the $25,000 paid to the plaintiff. A purely legal defense was set up ; it was tried as an action at law, and no motion was made to convert it into an equity action.

:- It is idle to say that the distinction between legal and equitable actions has been wiped out by the modern practice. It is true that all actions must be commenced in the same way ; that in every form of action the facts constituting the cause of action or defense must be truly stated ; that fictions in pleadings have been abolished, and that both kinds of actions are triable in the same courts. But the distinction between legal and equitable actions is as fundamental as that between actions *ex contractu* and *ex delicto,* and no legislative fiat can wipe it out. (*Reubens* v. *Joel*, 13 N. Y. 488 ; *Goulet* v. *Asseler*, 22 id. 225.)

At any rate the difference between an action to rescind a contract and one brought, not to rescind it, but based upon the theory that it has already been rescinded, is as broad as a gulf. They depend upon different principles and require different judgments.

Here the tender of the money into court at the close of the trial would have been sufficient if this had been an equitable action for a rescission and relief consequent thereon. But the tender having been made after the action was commenced was insufficient for this action. Even if this tender had been made before the action was commenced, it would have been insufficient, as it was not a tender to the bank. The money was not offered nor restored to the bank, nor placed in its power. It was placed in the custody of the court and the bank could not take it. To entitle a party to proceed as upon a rescission of the fraudulent contract, the tender or restoration must be to the other party, and must be without qualifications or conditions. Every right under the repudiated contract must be absolutely surrendered.

The conclusion we thus reach leaves a defrauded party with ample remedies. One situated like the plaintiff can rescind by tendering or restoring what he has received, and then commence his action. He may keep what he has received and sue to recover damages for the fraud; or he may commence an action in equity to rescind and for equitable relief, offering in his complaint to restore, in case he is not entitled to retain, what he has received. These actions are all fundamentally different. If the party is not willing or able first to restore what he has received, he is confined to one of the last two remedies.

There are some cases, one of which certainly is analogous to this, which should yet be referred to. In *McMichael* v. *Kilmer* (76 N. Y. 36) the rule, as extracted from the case by the learned reporter, is stated in the head-note as follows: " Where an amount is paid expressly as a compromise of an account, and not because it was conceded to be due, the party receiving the payment cannot set aside and cancel a release given by him, on the ground of fraud, and yet retain the whole consideration

therefor; if the release is to be canceled, the parties should be put in *statu quo* as far as possible." In *Bisbee* v. *Ham* (47 Me. 543) the defendants compromised and settled a claim of nearly $400 by the payment of $100. Afterward the plaintiffs sued the defendants to recover their entire claim, giving credit for the $100 paid. The defendants pleaded the accord and satisfaction, and the plaintiffs replied, alleging that they were led into the accord and satisfaction by the fraudulent representations and suppression of material facts by the defendants. The defendants demurred to the replication because the plaintiffs did not therein allege or show that the contract of accord and satisfaction had ever been abrogated or rescinded, or the $100 restored or offered to be restored to them; and the demurrer was sustained. Plaintiffs' counsel claimed that they could treat the $100 as a payment *pro tanto* upon their claim and recover the balance. But the court held that the action could not be maintained without repayment or an offer of repayment of the $100 to the defendants. In *Lee* v. *Lancashire & Yorkshire Railway Company* (L. R., 6 Ch. App. 527) the plaintiff was injured by a railway accident and sent in a claim for £691. The defendant paid him £400 and took a receipt acknowledging that sum to be in full discharge of his claim. Afterward he sued the company to recover further compensation, and it pleaded that the plaintiff had accepted the £400 in full satisfaction and discharge of the cause of action. He then filed his bill to restrain the company from relying on the plea, and while he was defeated upon another ground, Lord Justice JAMES expressed the opinion that he could get no relief in that court, on the ground of mistake in giving the discharge, " except on the terms of giving back the £400 and being put exactly in the same position as he was in when the transaction was completed."

Before closing this discussion I will notice an illustration of his argument, given by the learned counsel for the appellant, as it will also serve to make clearer the view I take of this case. Suppose A. goes abroad, leaving in the hands of his agent debts to be collected, against various debtors, among whom is B., a debtor

for $1,000, and before his return his agent dies. Upon his return, he finds among his papers no evidence that B. paid his agent, and then he calls upon B. and he claims that he paid the agent the whole debt. A. disputes this and they finally agree to compromise the dispute, B. paying $500. Afterward A. concludes that B. did not in fact pay his agent and claims that he was induced, by fraud, to enter into the compromise. So long as the compromise remains in force, no action based upon the original indebtedness can be maintained. The bar can be removed only by rescinding the compromise agreement, and that can be rescinded only by a restoration of the $500, so that they can resume their dispute upon a footing of equality, just where they left it before they entered into the compromise. When A. sues upon the original indebtedness, B. must be permitted to renew his dispute and set up payment of the entire debt to A.'s agent. If he can establish that, the $500 will be again in his hands where it belongs. If he fails, A. will recover his whole debt. If A. can maintain his suit without first returning the $500, he will have all the game in his own hands. If he wins the suit he will retain the $500 and get $500 more. If he loses the suit in consequence of proof that the whole debt had been paid to his agent he will still have the $500. He will thus in effect hold B. to the compromise but himself be released. Such inequality and injustice cannot be tolerated by correct principles of law.

These views show that the action was well defended at least as to the bank. Without stopping to inquire whether the same defense should inure to the benefit of the surety Beardsley, it is clear that the statute of limitations furnishes a bar as to him. This suit was commenced more than ten years after the cause of action had accrued against him. But the interest upon the bonds had been paid by the bank to the plaintiff until about four years before the commencement of the action. The interest was paid by the cashier, and it is sought to bind Beardsley by such payment simply because he once asked the cashier "if the interest upon the bonds had been kept up," and he replied "that it had been." At most this simply showed

knowledge on the part of the surety that the principal debtor had paid the interest. The payment of interest could ·keep the obligation in life as against him only by showing that he paid it, or that it was paid on his behalf by some one authorized to pay it for him. (*Harper* v. *Fairley*, 53 N. Y. 442.) Here the cashier did not pay the interest for him, and did not act or assume to act for him, but for and on behalf of the bank.

Therefore without touching other questions argued, the judgment should be affirmed.

All concur.

Judgment affirmed.