## INADEQUATE SETTLEMENT UNDER AN INSURANCE POLICY.

### The Manhattan Life Insurance Co. v. Burke.

#### 69 Ohio State—Decided, December 8, 1903.

*Contract of Life Insurance—Dispute as to Amount of Liability—
Amount Less than Claimed Paid to Claimant in Settlement—Action
at Law on the Policy Can not be Maintained Without a Tender
of Amount Received, When—Contract of Settlement Pleaded in De-
fense—A Reply that Settlement was Fraudulent not Sufficient in
Law, When.*

1. Where at the time of a compromise of a claim founded on a contract
   of life insurance, a dispute exists between the parties as to the
   liability of the company in any sum whatever, it denying that
   anything is owing, and an amount less than the claim is paid to
   the claimant in settlement of the controversy, and he executes
   a full acquittance and release, and surrenders the policy, an action
   at law on the policy can not be maintained without a return or
   a tender of the amount received, even though the party's assent
   to the settlement was obtained by the fraudulent representations
   of the other party, and the amount received as the settlement is
   in the petition credited as a payment on the policy.
2. Where in such case the contract of settlement is pleaded as a de-
   fense, a reply which simply alleges that the settlement was induced
   by fraud, but does not allege a payment or tender of the amount
   received, is not responsive to the answer, and is insufficient in law.
   *Insurance Co.* v. *Hull*, 51 Ohio St., 270, distinguished.

Error to the Circuit Court of Fairfield County.

The action below was upon a policy of life insurance issued
October 25, 1897, by The Manhattan Life Insurance Co., plaint-
iff in error, upon the life of one George Messmore for five
thousand dollars, which policy was assigned November 24, 1897,
by said Messmore to the defendant in error, plaintiff below,
Joseph Burke. It was alleged in the petition that Messmore
had deceased, that two thousand dollars had been paid plaintiff
by the company on the policy May 31, 1899, and that three
thousand dollars, with interest, remained due, for which judg-
ment was prayed.

Two defenses were interposed by the company. One that the
procuring of the policy and its assignment to plaintiff were a
mere scheme devised to cover a gambling transaction, the plaint-
iff having no insurable interest in the life of Messmore, and

·that a controversy having arisen the same was compromised for the amount credited. The second defense set up that after the death of Messmore, plaintiff, claiming to be the owner of the policy, demanded of the defendant that it pay to him the sum of five thousand dollars, which payment, the. defendant, having been advised by its counsel that it was not liable therefor, refused to make, upon the ground as then stated by it to the plaintiff that the policy having been taken out by him for his own sole use and benefit on the life of Messmore, in which he had no insurable interest, was a gambling policy, and that the plaintiff was not entitled to be paid or recover from the defendant any sum whatever under said policy. Thereupon the plaintiff and the defendant, the latter having been advised by counsel learned in the law that it was not liable to the plaintiff in any sum whatever on account of said policy, agreed to compromise and settle said disputed claim for the sum of two thousand dollars, which sum the defendant, in pursuance of said agreement of compromise and settlement, paid to the plaintiff, which the plaintiff ever since has and still retains. In consideration of said payment and of the compromise and settlement of said disputed claim, the plaintiff then and there delivered the policy to the defendant to be canceled, and also duly executed and delivered to the defendant the release, a copy of which is as follows:

"In consideration of two thousand dollars, this day paid and for good and valuable consideration thereto moving, the receipt whereof is hereby acknowledged, the annexed policy No. 108540 on the life of George Messmore, of or near Commercial Point, Ohio, heretofore issued by The Manhattan Life Insurance Co., of New York, is hereby surrendered, canceled and annulled, and all right, title and interest therein of any nature whatsoever is hereby absolutely and forever relinquished; and the undersigned for themselves and their personal representatives hereby guarantee the validity and sufficiency of this instrument, and tha no claim will ever be made against said company under or by reason of said policy. Witness my hand and seal this twenty-third day of May, 1899.

"(SEAL). JOSEPH BURKE, *Assignee.*"

For reply to the first defense plaintiff pleaded a general denial, and as reply to the second defense he averred that the writing of the release was obtained from him by the fraud of the

defendant, its officers and agents; also by their false and fraudulent representations made to the plaintiff that the said policy had never in fact been issued and was not a legal and binding contract; that the same had not in fact been assigned to plaintiff; that the company had not in fact ever assented to such assignment and transfer; that a mistake had been made by the agents of the company in the writing of the policy and in the assignment thereof which rendered the same worthless and void, which were made to the plaintiff by the agents of defendant and others in its employ who were neighbors of plaintiff and professed to be his friends, which employment was then unknown to plaintiff, and were aiding defendant to cheat and defraud plaintiff out of the policy and the money due him thereon. They also urged and advised plaintiff that he should not consult lawyers respecting the policy and the assignment and other matters connected therewith; and they thus overcame and overreached plaintiff and prevented him from consulting counsel, he being unskilled in business affairs, wholly unfamiliar and unacquainted with such matters and the law. And plaintiff relying on such false and fraudulent representations, and believing them to be true, was overreached and an unfair and unlawful advantage gained over him, and his signature obtained to a paper professing to surrender and cancel said policy.

The cause coming on for trial, the defendant, before the impanneling of a jury, moved the court for judgment upon the pleadings, both upon the ground of departure in the reply and that they disclosed the fact that the matter in controversy had been settled. This motion was overruled.

Testimony was then given to the jury by the plaintiff, over the objection of the defendant, tending to maintain the allegations of his petition. Testimony was then given by defendant tending to maintain its claim of settlement. Rebutting testimony was then given by plaintiff tending to establish the alletions of fraud in the reply.

At the conclusion of the testimony the defendant moved the court to arrest the case from the jury, which was overruled. Counsel for defendant then made this statement:

"I want the record to show that the defense has refrained from offering testimony upon any issue except as to the fact of a settlement for the reason that the plaintiff is not entitled

to recover or maintain the present litigation, in the event of a settlement having been effected, without a tender back of the amount paid.''

Counsel for defendant then requested the court to charge the jury that: ''If you find that there was a settlement of the Messmore policy by the payment and acceptance of two thousand dollars in full of all claims under it,·your verdict must be for the defendant, whether it was a settlement procured by fraud or not; for the reason that Burke makes no offer to restore the money so received.'' This was refused, and the substance of it was not given in the charge. Exceptions were noted to that refusal and to the charge. A verdict was then rendered for the plaintiff for the amount claimed, and, motion for a new trial being overruled, judgment was rendered on the verdict. That judgment was affirmed by the circuit court, and the company brings error.

*Maxwell & Ramsey* and *Robert Ramsey,* for plaintiff in error.

*M. A. Dougherty,* for defendant in error.

SPEAR, J.; BURKET, C. J.; DAVIS, SHAUCK, PRICE and CREW, JJ., concur.

The judgment of affirmance announced after the first hearing of this case (68 Ohio St., 681), was not the unanimous decision of the court, three judges only concurring therein. The case having been more fully argued on the rehearing, and further considered by the court, is now for disposition as upon the original submission.

. Counsel for the company at the trial rested its case upon two propositions, and they rest it upon the same propositions here. If their position is correct then the judgments below are erroneous and should be reversed; if not then the judgments should· be affirmed.

The propositions are that the reply is a departure not permissible under our rules of practice, and that under the facts as disclosed by the pleadings there could be no recovery inasmuch as the plaintiff had failed to allege, as he had failed to prove, any return or tender back of the money received in the settlement.

The two may be treated together, and, put in legal phrase, the proposition is: A compromise, although procured by fraud,

is a bar to an action upon the original claim until rescinded by a tender back of the consideration paid.

On the other hand, as an answer to this, it is claimed that where fraud has induced the agreement, the settlement is not binding, since fraud vitiates all contracts, and no tender back or payment is necessary to authorize a suit on the original contract where the judgment asked for will attain that result, which is this case.

In determining the vital legal question, however, it is important to keep in mind certain features of the controversy shown by the pleadings and the testimony. The plaintiff's suit was *upon* the original contract; it was not a suit to rescind a contract, or to reform it, nor an action for damages on account of fraud. No mistake is shown in the paper itself; nor is it alleged in the pleadings that the plaintiff signed any paper which he did not understand and did not intend to sign; the claim is that he was induced to agree to sign, and to sign the contract, a contract of settlement otherwise lawful and valid, by the fraud and misrepresentation of the agents and employes of the company. The presence of a controversy between the parties as to whether any liability at all existed on the part of the company in favor of the plaintiff, is shown by the allegations of the answer and as clearly shown by the testimony introduced by the plaintiff himself. It is also clear that, to settle this disputed demand, the execution of the release and surrender of the policy by the plaintiff was had, and the payment of the two thousand dollars by the company made.

The real question then is this: Where, at the time of the compromise of a claim founded on contract, a dispute exists between the parties as to the liability of the alleged debtor in any sum whatever, he denying that anything is owing, and an amount less than the claim is paid to the claimant in settlement of the controversy, can the party claimant maintain an action at law on the original contract, without tendering back the sum received, even though his assent to the settlement was obtained by the fraudulent and false representation of the other party?

No dispute exists between counsel, and we presume no doubt exists, of the soundness of the general proposition that where a party to a compromise desires to set aside or avoid the same and be remitted to his original rights, he must place the other

party in *statuo quo* by returning or tendering the return of whatever has been received by him under such compromise, if of any value, and so far as possible, any right lost by the other party in consequence thereof. · In an action to rescind, the petition should allege the fact of such return or tender, prior to, or at least contemporaneous with, the commencement of the suit. Further, as a general proposition, the rule obtains even though the contract of settlement was induced by the fraud or false representations of· the other party; the ground being that by electing to retain the property, the party must be conclusively held to be bound by the settlement (8 Cyc. of Law & Pro., 531). No further authorities seem necessary in support of these propositions.

Numerous exceptions have, however, been engrafted on this general rule. One is that restoration is not necessary where the money received by the party was due him in any event and if returned could be recovered back. *Bebout* v. *Bodle,* 38 Ohio St., 500, may be referred to as illustrative. An action was brought by Phoebe S. Bodle on a note signed by William Bebout as principal and Solomon Bebout as surety. Solomon pleaded his suretyship and an extension of time for payment by agreement to pay interest between the plaintiff and the principal maker without his consent. Plaintiff, by reply, admitted the agreement and receipt of the interest money, but alleged that the agreement to extend was procured by fraud. Solomon demurred to the reply, contending that as no offer to pay back the interest money had been pleaded, the reply was insufficient. But the district court held, and this court held, that such payment back was not necessary, as, in any event, the principal maker owed the debt, and all of it. Of course the payment back would have been the doing of a vain thing, inasmuch as the plaintiff was admittedly entitled to the interest paid, whether by virtue of the settlement, or by the principal maker's original liability, which liability was in no way impaired. The law does not require an idle ceremony. A less obvious distinction, at least one more likely to be misconstrued, is sought to be engrafted to the effect that an offer to return is unnecessary if the judgment asked for will accomplish that result. If this be conceded as a naked proposition, yet its application to the case before us is not clear, and the decisions cited as illustrating

it do not seem to closely resemble our case. The principal one is that of *Allerton et al v. Allerton,* 50 N. Y., 670. The plaintiffs, the defendant, and one McPherson were partners. The defendant (who had managed the business), by fraudulent representations to plaintiffs as to the unprofitable character of the business, and that he (defendant) in conjunction with them would sell out to McPherson, induced plaintiffs to unite with him in such sale upon being refunded the amount invested by them, and thereafter defendant represented that he had sold out, and paid to plaintiffs the money advanced by them, while in fact defendant did not sell but retained his interest, and subsequently acquired McPherson's interest; the business was profitable, and defendant had received large gains and profits. They asked that the sale be declared void, that defendant account for all moneys received by him, and that they have judgment for their portion of the profits less the amount received. It is to be noted that this was a suit brought directly to set aside the alleged agreement. It was in chancery, tried by the court, and, as appears by the record, the plaintiffs were entitled to an accounting and to judgment, if the claim of fraud should be maintained. The court was appealed to as a court of equity by the injured parties, by a proper pleading, to rescind a contract induced by fraud and then for an accounting. They did not, as in the present case, attempt themselves to rescind and ignore the contract. The case gives little, if any, aid in determining our question. And that it does not apply to a case like ours is distinctly held by the same court in *Gould* v. *C. C. N. Bank,* 86 N. Y., 75, where the Allerton case is referred to as an action in equity to rescind, in which the rights of the parties could be fully regarded and protected. The Gould case, as in the case at bar, was an action on the original claim, and it was there held that one who seeks to rescind a compromise of a disputed claim on the ground of fraud must restore or offer to restore whatever of value he has received; that in an action at law upon the original claim the plaintiff must show that he thus rescinded the fraudulent compromise prior to the commencement of the suit; if no rescission is shown, a final determination of the court that plaintiff was entitled to more than the sum paid is no answer to the objection. A case involving a similar question is that of *O'Brien* v. *C. M. & St. P. Ry. Co.,* 89 Iowa,

644. It is there held that where a settlement with an employe on account of damages sustained from a personal injury was procured by false representations that other witnesses to the accident were against him, and the promise that he would be given work as long as he behaved himself, which promise was broken, and that the employe was in such condition mentally as not to understand the effect of the release which he signed, such settlement is not a bar to an action for damages for the injury, and that a tender of the amount received is not necessary before an action on the original liability. The record does not clearly show that the company disputed its liability at the time of the settlement, and a fair inference is that it did not, for it does not appear that the court rested its judgment on the proposition that "one who attempts to rescind a transaction on the ground of fraud is not required to restore that which in any event he would be entitled to retain, either by virtue of the contract sought to be set aside or of the original liability." This proposition is taken from the opinion and syllabus in *Kley* v. *Healy*, 127 N. Y., 555, and that case is relied upon as authority for the Iowa decision. That action was one brought to procure the cancellation of a satisfaction of a judgment upon the ground that it was obtained by fraud, and that the judgment be restored as a valid lien. The court held that the defendant would be entitled to what she had received, whatever might be the result of her action for a rescission. If the action failed she was entitled to what had been paid; if she succeeded the sum was less than she was concededly entitled to by the original judgment. Hence an offer to return was not necessary. Here, too, was an appeal to a court of equity to procure a rescission. It, like the Allerton case, would seem to fall short of affording a solution of our case. The holding in the Kley case is consistent with earlier New York cases, notably *Cobb* v. *Hartfield*, 46 N. Y., 533, and *McMichael* v. *Kilmer,* 76 N. Y., 36, and with a host of other cases in that state and elsewhere in which the general rule hereinbefore given is maintained.

After very full consideration of the controversy in all its bearings, and an extensive examination of authorities, we are satisfied that the case at bar comes within the general rule and not within any of the exceptions sought to be engrafted upon it. The rule may be briefly stated: If at the time of the agree-

ment there was, without dispute, an amount due equal to the amount paid, as in *Bebout* v. *Bodle, supra,* and in *Kley* v. *Healy, supra,* then no tender is necessary; but if, at the time of the settlement, it is denied by the alleged debtor that anything is· owing, and a dispute as to that liability exists, and that is settled by payment and release, then a return or tender is necessary. There being in this case a controversy between the parties, a disputed claim which the parties, being *sui juris* at the time deliberately settled, the one executing a full and sufficient release, intending to do just' what he did do, and the other paying a money consideration therefor, the release, whether obtained by fraudulent representations or not, is binding until set aside either by a tender or return of the money received, or by a direct proceeding in a court of equity for that purpose, upon equitable terms, and the claim for rescission in such case on the ground of fraud can not be made by a reply.

It is to be borne in mind that the parties were settling a controversy. It was the settlement of this dispute that afforded the consideration for the compromise of the original claim. True it is that the amount received was discounted from the recovery. But that is no answer. We say as the New York court said in the Gould case. Suppose the verdict had been the other way, what would have been the position of the defendant in respect to the money paid under the release? Clearly there would be no recourse to recovery back from the plaintiff. The compromise agreement is binding upon the plaintiff in error, and could not be rescinded or set aside at its instance. If binding on one side it must be on the other so long as it exists. It did exist at the time this action was brought; it had not been rescinded, and consequently, while it bound one party it must equally bind the other. *Lyons* v. *Allen,* 11 App. D. C., 543; *E. T. D. & G. Ry. Co.* v. *Hayes,* 83 Ga., 558.

It is urged with much confidence that the face of this policy was a liquidated demand and that the payment of a less sum could not satisfy it, even though accepted as such, because there was no consideration for giving up the rest. The rule of law stated is good. But it is not correct to say that a policy of insurance is a liquidated demand. It is not identical with an instrument for the payment of money only, nor the judgment of a court. The every-day business of the courts shows to the

contrary. The original consideration may be sufficient, and there may be a legal delivery of the instrument, and yet, when the event insured against occurs, there may be, and in a great many instances there are, good and sufficient defenses to a ·recovery. There was such defense pleaded in this case. To characterize such a contract as a liquidated demand is a consideration in terms. It is safe to say that a claim concerning which a defense may be made is not a liquidated claim, and if a defense is made it is a proper subject of compromise. One may buy his peace. The law favors the amicable settlement of disputes.

In argument it is urged that the plaintiff below signed the contract of release without knowing its contents; that in accepting the check for two thousand dollars he supposed he was receiving payment on the policy, and hence the release is not binding upon him, and there was no settlement. The plaintiff does testify that he did not read the paper; that he couldn't read writing, although he could write his own name, and that the signatures on the release and on the check are his; that he signed them. He undertakes to say further that he received this money as a payment on the claim. It is true, also, that the jury, in addition to the general verdict, returned answers to divers interrogatories in which it is found that the parties did not agree to settle; that the two thousand was not paid plaintiff in full settlement of the policy; that the release and check did not express the intention · of the plaintiff, etc. But the testimony of Burke himself leaves no sort of question but that he perfectly understood that the agents of the company were there to settle the entire claim; that they had no other purpose, and that, by signing and delivering the release and surrendering the policy he was assenting to a settlement for the amount paid. He was *sui juris,* and in law able to look out for his own interests. The testimony respecting the alleged fraud would be potent in a suit properly brought, and the finding of the jury with respect to it might be conclusive of the facts in a suit involving them properly pending before a jury. But, over and against it all, there is the release and the surrender of the policy, and the retention of the money received, which are, while the contract of compromsie remains unrescinded, controlling. In the words of another, restitution before absolution is as sound in law as in theology.

But it is insisted, finally, that the case is ruled by *Insurance Co.* v. *Hull*, 51 Ohio St., 270, and that to reverse the judgment below will be to overrule that case. We do not think so. The holding in that case involved the effect of a suppression of a criminal prosecution, and the decision is based on that fact. A contract attempted to be founded upon such consideration has no legal efficacy; it is against public policy, is void absolutely, and incapable of ratification. It is otherwise with a contract induced by fraud. Such contract is voidable only. We may not agree with all of the argument and all of the conclusions stated in the opinion by the learned judge who reported that case, but our case does not require any criticism upon the decision, much less an overruling of it. Indeed the opinion itself, in the concluding paragraph, emphasizes the distinction between that case and one where the contract sought to be rescinded has been induced by fraud. The distinction was also made by the learned trial judge in his charge wherein he said to the jury, among other things, that if there was a settlement as claimed and a promise that the plaintiff should not be prosecuted on the charge of burning the property, formed no part of the consideration for such settlement, she could not recover, but if such promise was a part of the consideration, the contract was void and constituted no defense to the action.

We do not overlook the claim made in argument that the testimony of the plaintiff was that at the time of the settlement there were threats of imprisonment. He does so testify. But there is no claim made in the pleadings of the suppression of a criminal prosecution, nor was there any offer to amend the pleadings; and whether, if they had been amended and that charge made, the testimony would have supported it, we need not inquire. Besides, all the evidence was subject to the objection made at the outset of the trial.

As conclusion we are of opinion that no right of recovery was shown on the part of plaintiff below and that the judgments in his favor are erroneous. The former entry of affirmance will be set aside, and judgment for plaintiff in error will be rendered in accordance with this opinion.

*Reversed.*