DUQUETTE v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.   March 9, 1910.)

FRAUD (§ 28*)—RIGHT OF ACTION.

   One induced to compromise for $151 his claim for personal injury by
   the fraud of the agent of the party liable for the injury, falsely repre-
   senting that the party would pay only that amount while the party had
   placed in the agent's hands $325 with which to make a compromise, may
   sue the party for the fraud and recover the additional $174, which the
   agent appropriated to his own use.

   [Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 8, 26; Dec. Dig.
   § 28.*]

Appeal from Jefferson County Court.

Action by John E. Duquette against the New York Central & Hud-
son River Railroad Company. From a judgment for plaintiff, and
from an order denying a new trial on the minutes, defendant appeals.
Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS,
KRUSE, and ROBSON, JJ.

Purcess & Purcell, for appellant.
Pitcher & O'Brien, for respondent.

WILLIAMS, J.   The judgment and order should be affirmed, with
costs.

The action was brought to recover damages for fraud in the com-
promise of a claim for injuries alleged to have been caused by de-
fendant's negligence.   The compromise was made between the plain-
tiff and the claim agent of defendant, one McCormick.   The fraud
alleged was the statement made by McCormick to plaintiff that the
defendant would pay only $151, when it had already consented to
pay $325, and had placed that sum of money in McCormick's hands
to make the compromise with.   The plaintiff accepted the $151, and
signed release, and McCormick pocketed the difference $174.   A year
or two later the defendant discovered this and other like transac-
tions, in which McCormick had misappropriated large sums of money.
He paid the money back to the defendant, and was sent to state's prison
for the crimes committed, and is now serving his term.   The plaintiff
upon discovery of the fraud practiced upon him brought this action.

There is practically no dispute as to the facts.   McCormick was
not a witness.   The questions involved are really legal in their nature.
The plaintiff relied upon the cases of Gould v. Cayuga County N.
Bank, 86 N. Y. 75, and 99 N. Y. 333, 2 N. E. 16.   The plaintiff there
was defeated in the first action, and then brought the second one, in
which he succeeded.   In those cases the plaintiff sought to recover
by reason of fraud in a compromise agreement, under which he re-
ceived $25,000.   The plaintiff did not return or tender back the money
received.   In the first case, the action was at law upon the original
claim compromised, and the court held that the action was based on
a rescission of the compromise agreement, and no recovery could be

had because there had been no return or tender back of the money received before the action was commenced. In the second case the action was for damages by reason of the fraud in the compromise agreement, and it was held such action was based upon an affirmance of the agreement, and could be maintained without the return or tender back of the money received on the compromise. The original claim—the one compromised—was for breach of an agreement to return bonds loaned by Gould to the defendant bank. The amount of bonds loaned does not appear in the report of either case, but we may assume it was largely in excess of the $25,000 paid upon the compromise. The plaintiff had the bonds on deposit with the bank for safe-keeping. He loaned them to the bank upon an agreement that the bank would return or replace them before interest became due thereon. Plaintiff thereafter applied for his bonds, and was told there were none on deposit belonging to him. He made a claim under the agreement and the bank alleged the bonds had been returned, or replaced by others, and put·in its vault, and the loss of the bonds by the embezzlement of the cashier was plaintiff's, and not the bank's loss, or, at least, the bank had not broken its agreement to return or replace the bonds. Negotiations were had for a compromise of plaintiff's claim, and the bank officers represented as a matter of fact that the bonds had been so returned or replaced and put in its vault, whereas in truth there never had been any such return or replacement. Relying upon this false statement, Gould made the compromise agreement, and accepted the $25,000. This was the fraud alleged, and on account of which the Court of Appeals held a recovery could be had.

In both cases the court held the original claim or obligation was extinguished by the compromise agreement, so long as the latter stood; that the plaintiff had the choice of three remedies to enforce any rights he had: First. To rescind the compromise agreement, and seek to recover upon the original claim, in which case he must before action brought return or tender back the money received—the $25,000. Second. To affirm the comproise agreement, retain the money received under it, and seek to recover damages for the fraud. Third. To seek in equity to rescind the compromise agreement, and· for equitable relief and offer in his complaint to restore the $25,000, if he was not entitled to retain it. He failed in his effort to enforce the first remedy because he failed to return or tender back the money before action was brought. The second remedy was then sought. Some discussion in the opinion of the court in the later of the two cases will serve to indicate the application of that case to the case we are considering.

I quote as briefly as possible, referring to the report itself for a more detailed statement of the language. Judge Finch said:

"The $25,000 obviously was the agreed value of a disputed right of action, but an agreed value won out of Gould by a false and fraudulent statement of facts, upon which such value depended. If no falsehood had been told him that value would have been greater in his judgment, and so is his demand as a term of the compromise made, and that such value was fixed at $25,000, and no more, was the direct product and result of the fraud. * * * Gould did not receive what he contracted for, but, contracting for the fair value of his disputed claim was induced by fraud to accept less than that fair value, and

he seeks by this action to have that consideration made equal to what it would have been had no falsehood been told him. * * * There having been no rescission of the compromise agreement, that must stand, and it discharges forever the original contract and extinguishes all rights to any balance due upon it. * * * Such damages will compensate the fraud, as make the compromise, which is to stand, an honest and fair one, instead of a dishonest and fraudulent one. Damages which leave it to stand, but purge it of fraud, are what should be recovered. What the plaintiff sold and the defendant bought was not a conceded, but a disputed, claim. * * * Upon a false statement of the facts material to the probabilities of success, and so affecting vitally the value of the disputed claim, in the compromise negotiation, the plaintiff was induced to take $25,000 for his resisted demand. If there had been no fraud, how much more would he have got in the compromise? When we know that, we know the loss, and can measure the indemnity. * * * A dispute ending in a compromise implies mutual concession and a loss borne by each party, and, if the compromise is honest and fair, the loss thus resulting is beyond recovery by either against the other. But that portion of the loss of the one which is put upon him in excess by the fraud of the other, and is due solely to that fraud, may be recovered. * * * That there is difficulty in ascertaining these damages is true, and must be left to the sound judgment and good common sense of a jury, but that often occurs in actions ex delicto. The result will be that the plaintiff affirming the compromise agreement and unable to recover the contract balance is entitled in accordance with the general rule to have such compromise agreement made as good for him, as it reasonably and fairly would have been, if only the truth had been told instead of a falsehood asserted. When that is done, the loss due to the fraud, and that only, is recovered, the true value of the disputed claim, and not a false value, and so not at all the extinguished contract balance."

These extracts show very clearly the principles of law applicable to this kind of actions, affirming a compromise agreement and seeking damages for fraud in making the same. We see no reason why these principles are not applicable to the action here being reviewed. The plaintiff had a claim for damages on account of personal injuries inflicted through the negligence of the defendant. It was not a conceded claim. Neither the right to recover nor the amount of damages was agreed to. Both were in dispute. Negotiations for a compromise were had, resulting in an agreement wherein plaintiff released his claim for $151. As an inducement to plaintiff to make the agreement, he was told the defendant was unwilling to pay more, and he must take that or no settlement would be made. This statement was false. McCormick had actually received from the defendant and had it in his hands to pay plaintiff on account of the compromise of his claim $325, and he pocketed the balance, $174, himself. Certainly, if the plaintiff had known these facts and the false representation had not been made, he would have demanded and received at least the additional $174 himself. The claim, when the real facts were known, was fairly worth the full $325. He recovered the balance he lost, $174, under the law as laid down in the Gould Case.

I see no reason why the recovery should not be sustained. The amount recovered here is not large, but the case may very likely be important by reason of many other cases likely to arise out of the embezzlement of this same claim agent, McCormick.

The defendant claims no actionable fraud was shown. I think the false representation made constituted such fraud. It was of an exist-

ing fact, and its effect upon plaintiff in inducing the compromise can hardly be doubted.

I do not care to discuss the matter at great length. I leave it to the sound common sense of ordinary minds. The plaintiff lost $174 by reason of the false statements of McCormick, the agent of defendant. He has been permitted to recover the amount of this loss as a direct result of the fraud. The recovery is a just and legal one. I think no reversible errors were committed by the trial court in its charge or disposition of defendant's requests to charge, and that there should be an affirmance in the case.

Judgment and order affirmed, with costs. All concur.

––––––––––––––

URTZ v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.    March 9, 1910.)

1. RELEASE (§ 24*)—FRAUD—REMEDIES.

One induced by fraud to execute a release of a claim for damages for negligence may rescind, return or tender the money received under it and sue on the original cause of action, or he may affirm the settlement, retain the money received, and sue for damages for the fraud, or he may sue in equity to rescind and for equitable relief offering in the complaint to restore the money, if he is not entitled to retain it.

[Ed. Note.—For other cases, see Release, Dec. Dig. § 24.*]

2. ACTION (§ 36*)—CHANGE OF CHARACTER OR FORM.

A judgment for plaintiff suing for fraud inducing the compromise of a claim for the negligent death of her intestate is not sustainable as rendered in an action for the original negligence, though so tried and submitted, when such an action was not maintainable because the compromise had not been rescinded and the money received under it tendered back, and it is not sustainable as rendered in an action for the fraud when the question of damages for fraud was not submitted to or passed on by the jury.

[Ed. Note.—For other cases, see Action, Dec. Dig. § 36.*]

3. FRAUD (§ 49*)—REMEDIES—ISSUES, PROOF, AND VARIANCE.

One suing for fraud inducing the compromise of a claim for damages for the negligent death of plaintiff's intestate need only prove that an accident occurred, that intestate's death resulted, and that a claim for liability against defendant was made, and he need not show the existence of a valid claim against defendant.

[Ed. Note.—For other cases, see Fraud, Dec. Dig. § 49.*]

Appeal from Trial Term, Lewis County.

Action by Rose M. Urtz, as administratrix, against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, and from an order denying a new trial on the minutes, defendant appeals. Reversed, and new trial ordered.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Purcell & Purcell, for appellant.
Pitcher & O'Brien, for respondent.

––––––––––––––

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes