JOHN E. DUQUETTE, Respondent, v. THE NEW YORK CENTRAL AND
HUDSON RIVER RAILROAD COMPANY, Appellant.

Fourth Department, March 9, 1910.

**Fraud — release obtained by fraud — remedies.**

One who has been induced to release a cause of action for negligence on the
payment of a certain sum by reason of the fact that the defendant's agent
although in possession of a larger sum given him by the defendant to pay to
the plaintiff, represented that the smaller sum was all the defendant would
pay and converted the difference, may maintain an action based on fraud to
recover of the defendant the sum retained by the agent.

Under such circumstances the defrauded party has three remedies: (1) He may
rescind the compromise and seek a recovery upon the original claim, in which
case he must tender the sum received before action brought; (2) he may affirm
the compromise, retain the money received under it and recover damages for
the fraud; (3) he may sue in equity to rescind the compromise and for equitable
relief, offering to restore in his complaint the amount received if he be not
entitled to retain it.

APPEAL by the defendant, The New York Central and Hudson
River Railroad Company, from a judgment of the County Court of
Jefferson county in favor of the plaintiff, entered in the office of the
clerk of said county on the 29th day of June, 1909, upon the ver-
dict of a jury for $174, and also from an order entered in said
clerk's office on the 1st day of July, 1909, denying the defendant's
motion for a new trial made upon the minutes, with notice of an
intention to bring up for review an order entered on the 29th day
of June, 1909, denying the defendant's motion for a nonsuit.

*Henry Purcell,* for the appellant.

*F. B. Pitcher,* for the respondent.

WILLIAMS, J.:

The judgment and order should be affirmed, with costs.

The action was brought to recover damages for fraud in the
compromise of a claim for injuries alleged to have been caused by
defendant's negligence.

The compromise was made between the plaintiff and the claim
agent of defendant, one McCormick. The fraud alleged was the

statement made by McCormick to plaintiff that the defendant would pay only $151 when it had already consented to pay $325, and had placed that sum of money in McCormick's hands to make the compromise with. The plaintiff accepted the $151, and signed release and McCormick pocketed the difference, $174. A year or two later the defendant discovered this and other like transactions, in which McCormick had misappropriated large sums of money. He paid the money back to the defendant, and was sent to State's prison for the crimes committed, and is now serving his term. The plaintiff upon discovery of the fraud practiced upon him brought this action.

The questions involved are really legal in their nature. The plaintiff relied upon the cases of *Gould* v. *Cayuga County Nat. Bank* (86 N. Y. 75 and 99 id. 333). The plaintiff there was defeated in the first action, and then brought the second one, in which he succeeded.

In those cases the plaintiff sought to recover by reason of fraud in a compromise agreement, under which he received $25,000. The plaintiff did not return or tender back the money received. In the first case the action was at law upon the original claim compromised, and the court held that the action was based on a rescission of the compromise agreement, and no recovery could be had because there had been no return or tender back of the money received before the action was commenced. In the second case the action was for damages by reason of the fraud in the compromise agreement, and it was held such action was based upon an affirmance of the agreement and could be maintained without the return or tender back of the money received on the compromise. The original claim, the one compromised, was for breach of an agreement to return bonds loaned by Gould to the defendant bank. The amount of bonds loaned does not appear in the report of either case but we may assume it was largely in excess of the $25,000 paid upon the compromise. The plaintiff had the bonds on deposit with the bank for safekeeping. He loaned them to the bank upon an agreement that the bank would return or replace them before interest became due thereon. Plaintiff thereafter applied for his bonds, and was told there were none on deposit belonging to him. He made a claim under the agreement and the bank alleged the bonds had been returned or replaced by others and put in its vault, and the loss of

the bonds by the embezzlement of the cashier was plaintiff's and not the bank's loss, or at least the bank had not broken its agreement to return or replace the bonds. Negotiations were had for a compromise of plaintiff's claim and the bank officers represented as a matter of fact that *the bonds had been so returned or replaced and put in its vault,* whereas in truth there never had been any such return or replacement. Relying upon this false statement, Gould made the compromise agreement and accepted the $25,000. This was the fraud alleged and on account of which the Court of Appeals held a recovery could be had.

In both cases the court held the original claim or obligation was extinguished by the compromise agreement so long as the latter stood, that the plaintiff had the choice of three remedies to enforce any rights he had.

*First.* To rescind the compromise agreement, and seek to recover upon the original claim, in which case he must, before action brought, return or tender back the money received — the $25,000.

*Second.* To affirm the compromise agreement, retain the money received under it, and seek to recover damages for the fraud.

*Third.* To seek in equity to rescind the compromise agreement and for equitable relief, and offer in his complaint to restore the $25,000 if he was not entitled to retain it.

He failed in his effort to enforce the *first* remedy, because he failed to return or tender back the money before action was brought. The second remedy was then sought. Some discussion in the opinion of the court in the later of the two cases will serve to indicate the application of that case to the case we are considering.

I quote as briefly as possible, referring to the report itself for a more detailed statement of the language. Judge FINCH said: " The $25,000 * * * obviously * * * was the agreed value of a disputed right of action, but an agreed value won out of Gould by a false and fraudulent statement of the facts upon which such value depended. If no falsehood had been told him that value would have been greater in his judgment and so in his demand as a term of the compromise made; and that such value was fixed at $25,000, and no more was the direct product and result of the fraud. * * * Gould did not ' receive just what he contracted for,' but contracting for the fair value of his disputed claim was induced by

fraud to accept less than that fair value, and   *   *   *   he does 'seek by this action to have that consideration made equal' to what it would have been had no falsehood been told him.   *   *   *   There having been no rescission of the compromise agreement, that must stand, and it discharges forever the original contract and extinguishes all right to any balance due upon it.   *   *   *   Such damages will compensate the fraud as make the compromise, which is to stand, an honest and fair one, instead of a dishonest and fraudulent one.    Dammages which leave it to stand but purge it of fraud are what should be recovered.    What the plaintiff sold and the defendants bought was not a conceded but a disputed claim.    *   *   *   Upon a false statement of the facts material to the probabilities of success, and so affecting vitally the value of the disputed claim in the compromise negotiation, the plaintiff was induced to take $25,000 for his resisted demand.    If there had been no fraud, how much more would he have got in the compromise?    When we know that, we know the loss and can measure the indemnity.   *   *   *   A dispute ending in a compromise implies mutual concession and loss borne by each party, and if the compromise is honest, and fair, the loss thus resulting is beyond recovery by either against the other.    But that portion of the loss of one which is put upon him in excess by the fraud of the other, and is due solely to that fraud, may be recovered.   *   *   *   That there is difficulty in ascertaining these damages is true, and much must be left to the sound judgment and good common sense of a jury, but that often occurs in actions *ex delicto*. The result will be that the plaintiff, affirming the compromise agreement and unable to recover the contract balance, is entitled in accordance with the general rule to have such compromise agreement made as good for him as it reasonably and fairly would have been if only the truth had been told instead of a falsehood asserted. When that is done the loss due to the fraud, and that only, is recovered; the true value of the disputed claim and not the false value; and so not at all the extinguished contract balance."

These extracts show very clearly the principles of law applicable to this kind of actions, affirming a compromise agreement and seeking damages for fraud in making the same.    We see no reason why these principles are not applicable to the action here being reviewed. The plaintiff had a claim for damages on account of personal inju-

ries inflicted through the negligence of the defendant. It was not a conceded claim, neither the right to recover nor the amount of damages was agreed to. Both were in dispute. Negotiations for a compromise were had, resulting in an agreement wherein plaintiff released his claim for $151. As an inducement to plaintiff to make the agreement he was told that the defendant was unwilling to pay more, and he must take that or no settlement would be made. This statement was false. McCormick had actually received from the defendant and had it in his hands to pay plaintiff on account of the compromise of his claim, $325, and he pocketed the balance, $174, himself. Certainly, if the plaintiff had known these facts and the false representation had not been made, he would have demanded and received at least the additional $174 himself. The claim, when the real facts were known, was fairly worth the full $325. He recovered the balance he lost, $174, under the law as laid down in the *Gould* case.

I see no reason why the recovery should not be sustained. The amount recovered here is not large, but the case may very likely be important by reason of many other cases likely to arise out of the embezzlement of this same claim agent, McCormick.

The defendant claims no actionable fraud was shown. I think the false representation made constituted such fraud. It was of an existing fact, and its effect upon plaintiff in inducing the compromise can hardly be doubted.

I do not care to discuss the matter at great length; I leave it to the sound common sense of ordinary minds. The plaintiff lost $174 by reason of the false statements of McCormick, the agent of the defendant. He has been permitted to recover the amount of this loss as a direct result of the fraud. The recovery is a just and legal one.

I think no reversible errors were committed by the trial court in its charge or disposition of defendant's requests to charge, and that there should be an affirmance in the case.

All concurred.

Judgment and order affirmed, with costs.