and regularly given, published, and served. Even if we give to this provision the broadest possible effect, it plainly cannot apply to a record which was wholly void."

Upon motion for reargument it was urged that the court had overlooked the effect of the act of 1890, which is now under consideration. But the memorandum upon reargument states:

"Not only was this statute referred to upon the original brief in behalf of the respondent, but the material portions thereof were quoted therein. In our opinion it cannot be regarded as a statute of limitations, for it requires a payment by the occupant of the lands sold for taxes as a condition of the assertion of his rights. The provision at the end of the amended section that a failure to make the prescribed payment within two years after the act takes effect shall make the tax sale absolute can be no more effective in the present case than the similar provision as to the regularity of the proceedings in section 132 of chapter 908 of the Laws of 1896."

This is a clear statement that the act of 1890 did not make absolute a deed treated as unrecorded, so as to relieve the grantee from failure to serve the notice after failure to redeem pursuant to the provisions of the act of 1890; and the decision is precisely applicable to the case at bar. The earlier reasoning herein to a contrary conclusion must yield to this explicit authority.

The judgment must be affirmed, with costs. All concur; CARR, J., in result.

---

SLOAT v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.   January 11, 1911.)

FRAUD (§ 28*)—RIGHT OF ACTION.

No fraud, giving plaintiff a right of action against defendant, was committed, where M., defendant's agent, authorized to make the "best settlement possible" of plaintiff's claim, not to exceed $2,000, represented that defendant would pay only $325, settled for that amount, reported a settlement for $1,875, obtained that amount, and kept the difference.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 8, 26;  Dec. Dig. § 28.*]

Williams, J., dissenting.

Appeal from Trial Term, Jefferson County.

Action by Margaret V. Sloat against the New York Central & Hudson River Railroad Company to recover $5,000 damages, alleged to have been sustained by plaintiff by reason of the fraud of defendant's agent, which induced her to settle and compromise a claim for personal injuries alleged to have been caused solely by defendant's negligence. From a judgment of nonsuit, directed at the close of plaintiff's case, which awarded costs against defendant, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Bloodough & Woolworth (Fred B. Pitcher, of counsel), for appellant.

Henry Purcell, for respondent.

McLENNAN, P. J. The facts are not in dispute. About noon of the 3d day of July, 1906, plaintiff, while attempting to cross the tracks of the defendant's railroad at a public street or highway in the city of Watertown, N. Y., was struck and run over by a hand car which was being operated by the defendant, and was injured more or less seriously. For the purposes of this appeal, the defendant having given no evidence, we must assume that such injuries resulted solely because of the negligence of the defendant.

After such accident the defendant, through its local claim agent, one McCormick, who resided in the city of Watertown, entered into negotiations with the plaintiff looking to a settlement of her alleged cause of action. Of course, at that time the amount of damages which the plaintiff had sustained, if any, was not fixed or determined. Neither had it been admitted or determined by the defendant that the plaintiff had any valid cause of action against it. The plaintiff simply made a claim for damages which she alleged she sustained because of the accident and which resulted solely through defendant's negligence.

Such being the situation, when it came to the knowledge of the defendant or its agent that an accident had occurred which resulted in injury to the plaintiff, McCormick, the local claim agent, had express or implied authority to investigate and negotiate for a settlement, irrespective of the strict legal liability of the defendant. Under such authority, express or implied, McCormick went to the hospital where the plaintiff was being cared for because of her injuries, and saw her upon several occasions, but always in the presence of her husband, and discussed with her how the accident happened, the extent of her injuries, and the terms upon which a settlement could be effected. As a result of such conversations he learned that the plaintiff and her husband would probably release the defendant from all claims which they or either of them had against it on account of the accident for the sum of $325, which amount he indicated would be paid by the defendant if accepted by them. The amount so tentatively offered by McCormick was not, however, definitely accepted at the time.

After such preliminary negotiations for settlement, and under date of July 9, 1906, McCormick made a report in writing of the accident to the defendant, in which he assumed to state the facts as to how it occurred, and the nature and extent of the plaintiff's injuries, expressing the opinion that the defendant was liable, and that the plaintiff was very seriously injured, and that in case of litigation a very large verdict against the defendant would probably be obtained. After detailing the state of facts as to the accident which would make the defendant liable as a matter of law, and after portraying the plaintiff's condition as a result of such injuries in such manner as to indicate that her injuries were of a most serious nature, he advised the defendant to settle by paying $1,500, if a settlement upon that basis could be obtained, and he advised in such report that such settlement should

be made at once. Such report was followed by a letter written by McCormick to the defendant, dated July 16, 1906, in which he stated that the plaintiff had become worse as a result of her injuries; that she was then a nervous wreck, and he again advised that a settlement be made at once, even if $1,500 or $2,000 should have to be paid. As a result of such report and letter, McCormick was authorized by defendant's chief claim agent "to make the best settlement possible up to $2,000." Having that authorization from the defendant, McCormick again saw the plaintiff, her husband being present, and stated to her that the defendant would not pay to settle her and her husband's alleged cause of action any more than $325; that if that sum was not accepted the case would be fought to the bitter end by the defendant, which it could do without expense to it, as its lawyers were employed by the year; and that if she, the plaintiff, should refuse the offer, even if successful in litigation, after paying her attorneys there would be practically nothing left for her.

After such interview with the plaintiff and her husband, they agreed to accept and did accept $325 for all the damages which they or either of them sustained because of the accident. McCormick paid that amount out of his own pocket and took a release from the plaintiff, which recited that for and in consideration of $1,875, received by her, she released the defendant from all claims on account of the accident in question. That release was dated on the 28th day of July, 1906, and on the same day a release was taken from the husband, the consideration being expressed as $1, to the same effect. After having paid the $325 out of his own pocket and having obtained the releases above referred to, McCormick, under date of July 26, 1906, obtained from the defendant $1,875 to be paid in settlement of such claim; the check being made payable to the order of the plaintiff. McCormick forged plaintiff's indorsement on the check, and obtained the entire proceeds, and the balance over and above $325 was stolen by him or applied to his own use. In other words, the defendant's local claim agent in Watertown had been authorized to make the best settlement possible up to $2,000 of plaintiff's claim, and acting upon such direction or authorization, and in strict compliance therewith he settled such claim for $325, obtaining plaintiff's release and also her husband's release in full of all claims because of said accident. McCormick therefore obtained from the defendant $1,550 in addition to the sum which he paid the plaintiff in settlement of her claim.

There is no pretense that the defendant set aside a certain sum of money for the settlement of plaintiff's claim and directed McCormick to pay such sum to her upon obtaining a release; but, upon the contrary, as we have seen, McCormick was expressly directed to settle for as small a sum as possible, but in no case to exceed $2,000. He did, so far as the plaintiff was concerned, exactly as he was directed by his principal, to wit, made "the best settlement possible," which involved payment by the defendant of only $325. By the fraud of McCormick he obtained from the defendant $1,550 in addition, which was applied to his own use.

It cannot be claimed that McCormick made any material false representations as to how the accident happened, or in any manner deceived her in that regard, as it occurred in broad daylight, and she was there and knew all about it. Neither was she deceived by McCormick as to the nature or extent of her injuries. During all the time that the negotiations for settlement were pending she was in full possession of her faculties, she was in the company of her husband, and had consulted and was being treated by a physician selected by her.

The only statement which McCormick made to the plaintiff which it can be claimed was false was that the defendant would not pay to exceed $325 in settlement of her claim, and if she did not accept that sum it would fight the case to the bitter end; whereas he was authorized to pay up to $2,000. But such authorization was not binding upon the defendant until acted upon. The defendant was at liberty to reduce the maximum amount to $325, and, in substance, that is what it did do. Make the "best settlement possible" was defendant's direction, and the sum agreed upon under such direction represented in fact the maximum amount which the defendant would pay.

The plaintiff, before the commencement of the action, or upon the trial, did not offer to return to the defendant the amount received by her. Therefore she cannot succeed upon her original cause of action. Gould v. Cayuga Co. Nat. Bank et al., 86 N. Y. 75; Cobb v. Hatfield, 46 N. Y. 533. We think it equally clear that, upon all the evidence in this case it cannot be said that the defendant's agent, McCormick was guilty of actionable fraud practiced upon the plaintiff.

This case is easily distinguishable from the case of Duquette v. New York Central & H. R. R. Co., 137 App. Div. 412, 121 N. Y. Supp. 876, recently decided by this court. In that case the defendant authorized its local claim agent—in fact, the same one, McCormick—to settle the plaintiff's claim for $325, and sent a check payable to the order of the plaintiff for that amount. After being thus directed to settle, and having the check in his possession, McCormick went to the plaintiff and stated to him that the defendant would only pay $151, and Duquette thereupon received $151 and signed a release; McCormick forging the indorsement on the check, and thus receiving the entire avails thereof, and pocketing the difference, $174. In that case a recovery was had against the defendant for the $174, being the difference between the amount of the check sent to McCormick, payable to the order of the plaintiff, and the amount which he paid to the plaintiff. This court unanimously affirmed such judgment.

But, as we have seen, in the case at bar McCormick was not authorized to pay $1,875, or any other sum, except such as would represent the least amount for which the claim could be settled, not to exceed $2,000. In making the settlement with the plaintiff, he was under no obligation to inform her that he had been authorized to pay up to $2,000. In fact, such authorization was qualified by the express direction that he should settle for the least sum possible, and such sum, when agreed upon, represented the maximum amount which the defendant would pay. The plaintiff knew all the facts respecting

the extent of her injuries and respecting the accident, and voluntarily, in the presence of her husband, she consented to receive $325 in settlement of her claim.   The fact that the defendant's agent told her that it would pay no more cannot, as it seems to me, be a basis for a recovery by her; neither is the fact available to her that McCormick falsely stated to the defendant that he had paid her $1,875, and thus obtained $1,550 from the defendant, which he applied to his own use. Suppose, as is suggested in the brief of respondent's counsel, that McCormick had been authorized to purchase land of A., and to pay for it up to $5,000, and by statements to the owner that the defendant would not pay more than $4,000 he succeeded in getting the land for that sum; could it be said that the seller could recover of the defendant the difference or any other sum?   We think not, and we think that in such case A.'s claim against the defendant would not be strengthened by the fact that the defendant's agent by fraud practiced upon it induced it to pay $5,000, the maximum price, in such manner as that such dishonest agent could obtain $1,000 for his own use, the difference between the actual amount paid for the purchase of the land and the maximum amount which such agent was authorized to pay.

Upon all the facts proven by the plaintiff, it is concluded that no actionable fraud was committed by the defendant, and that every statement made by McCormick was of an opinion, or of an immaterial fact.

I think the judgment of nonsuit should be affirmed.

Judgment affirmed, with costs.   All concur, except WILLIAMS, J., who dissents, upon the authority of Duquette v. N. Y. C. & H. R. R. Co., 137 App. Div. 412, 121 N. Y. Supp. 876.