# MIKE SWAN, Respondent, v. GREAT NORTHERN RAILWAY COMPANY, a Corporation, Appellant.

### (L.R.A.1918F, 1063, 168 N. W. 657.)

**Railway company — claim against — compromise settlement — operates as a merger — all right of action included — pre-existing claim — compromise agreement substituted for — rights and liabilities — measured by such agreement — limited thereto.**

1. A compromise and settlement fairly made operates as a merger of, and bars all right to recovery on, the claim or right of action included therein. The compromise agreement is substituted for the pre-existing claim or right, and the rights and liabilities of the parties are measured and limited by the terms of the agreement.

**Contracts — compromise settlement rests upon same footing — enforcement of — damages for breach — if procured by fraud — may be rescinded — election.**

2. A compromise stands upon the same footing as other contracts. Either party may enforce it, or recover damages for its breach. And if procured by fraud, the defrauded party may rescind it, if he elects to do so.

**Rescission — mutual restoration of consideration — refusal or failure of either party — to restore — or offer to restore.**

3. In order to effect rescission, the party rescinding must ordinarily restore or offer to restore the consideration received on the condition that the other party shall do likewise, unless the latter is unable or positively refuses to do so.

**Personal injuries — claim for — agreement of compromise settlement — full knowledge of facts and contents — release of claim — cannot avoid such settlement and release — suit on original claim — cannot maintain — unless consideration returned — or offer of return made and refused.**

4. Where a party agrees to compromise and settle a claim for personal injuries, and with full knowledge of the contents, and the nature, character, purpose, and effect of the instrument executes and delivers to the other party a release of the claim for personal injuries, he cannot avoid the compromise and release and recover on the original cause of action on the ground that the compromise or release was procured by fraud, unless he repays or tenders back the consideration received.

Opinion filed June 10, 1918.    Rehearing denied July 30, 1918.

From a judgment of the District Court of Eddy County, *Buttz*, J., defendant appeals.

Reversed.

*Murphy & Toner*, for appellant.

This lawsuit is governed by the Federal Employers' Liability Act; the case was not so pleaded or proved, and on defendant's motion should have been dismissed.

The railway line of defendant on which plaintiff was injured was a through line; the company was engaged in interstate commerce; plaintiff was an employee of defendant, and as such, under the existing facts, was employed in interstate commerce. Hein v. G. N. Ry. Co. 34 N. D. 440–446; Pederson v. Ry. Co. 229 U. S. 146; Ry. Co. v. Williams (Ky.) 103 S. W. 920.

Upon defendant's motion a verdict of dismissal should have been directed. Walker v. Ry. Co. 241 Fed. 395; Ry. Co. v. Wright, 239 U. S. 548; Ry. Co. v. Hayes, 234 U. S. 86; Ry. Co. v. Slavin, 236 U. S. 454.

The fact that the Federal act was not pleaded is immaterial; either party had the right to take advantage of it. Hein v. G. N. Ry. Co. 34 N. D. 440; Ry. Co. v. Lindsay, 233 U. S. 42; Ry. Co. v. Duvall, 225 U. S. 477; Lamphere v. Ry. Co. 47 L.R.A.(N.S.) 75; Ry. Co. v. Seale, 229 U. S. 156.

The right to demand and obtain sufficient security for costs exists even in the absence of statutory provision. 11 Cyc. 171, 174, 190.

In this case an original claim for damages for personal injuries was made. The claim was settled between the parties by a compromise amount; the defendant signed the release of claim and accepted and retained the amount of money paid to him under such compromise settlement agreement and release; he has never returned or offered to return such money, or any part of it. The plaintiff cannot maintain this action. Comp. Laws 1913, § 5936; Ry. Co. v. McElroy, 100 Ky. 153, 37 S. W. 844; Hill v. N. P. Ry. 113 Fed. 914; Price v. Comers, 146 Fed. 503; Heck v. Ry. Co. 147 Fed. 775.

There is no claim or evidence of fraud or misrepresentation at the time or as a part of the compromise agreement, therefore, the release was not void, but merely voidable, and cannot be revoked in an action at law. Smith v. Ry. Co. (Miss.) 73 So. 801; Shampeau v.

Lumber Co. 42 Fed. 760; Perry v. M. O'Neill & Co. 78 Ohio St. 200, 85 N. E. 41; Moline v. Bostwick, 109 N. W. 925; Insurance Co. v. Webb, 157 Fed. 155; Kosztelnik v. Co. 91 Fed. 606; Connor v. Chemical Works, 50 N. J. L. 257, 12 Atl. 713; Hill v. N. P. Ry. Co. 104 Fed. 754, 113 Fed. 914; Vandervelden v. Ry. Co. 61 Fed. 54; Ry. Co. v. Welch, 52 Ill. 183; McMahon v. Plummer, 50 N. W. 480; Ry. Co. v. Lewis, 109 Ill. 120; Hartley v. Ry. Co. 214 Ill. 78, 73 N. E. 398; Ry. Co. v. O'Rourke, 172 Ill. 177, 50 N. E. 242; Homuth v. Ry. Co. 129 Mo. 629, 31 S. W. 903; Hancock v. Blackwell, 139 Mo. 440, 41 S. W. 205.

Plaintiff at most has only pleaded a breach of contract. A promise made by one party to another, performance of which can be enforced, or damages recovered in a proper action for its breach, does not contain within it any element of fraud. This is true whether the promise was made with or without intention to perform it. 12 Cyc. 13; Comp. Laws 1913, §§ 5846, 5849; Tamlyn v. Peterson, 15 N. D. 488.

The court erred in its entire failure to instruct the jury on the doctrine of assumption of risk. Ry. Co. v. Deatley, 241 U. S. 310.

*N. J. Bothne,* for respondent.

This is the first time defendant has ever mentioned the Federal act or its application to this case.

"It is elementary that a party cannot adopt one position in the trial court and thereafter urge a different one here for reversal. This court must rule upon the same issues as did the trial court, and not upon new ones." Lynn v. Seby, 29 N. D. 420.

"In reviewing a ruling on a motion for nonsuit or a directed verdict, the appellate court will consider only the grounds urged in the trial court, and appellant will not be permitted to change them or to add others in the appellate court." Erickson v. Wiper, 33 N. D. 193; McLain v. Nurnberg, 16 N. D. 144; Poirier Co. v. Kitts, 18 N. D. 556; Petrie v. Wyman, 35 N. D. 126.

By failing to object to the complaint; by pleading contributory negligence, which is no defense under the Federal act; by failing to object to the evidence and instructions of the court on that ground; by failing to call the court's attention to the matter, and by trying the case on the theory that the state statute was applicable,—the defendant has waived its right under the Federal statute, if any existed, and

cannot now raise the point here for the first time on appeal. Leora v. Ry. Co. 146 N. W. 520.

"The rule seems to be well established and settled that a defendant, as in the instant case, will not be permitted for the first time in an appellate court to invoke the protection of a Federal statute." Hanson v. Ry. Co. 146 N. W. 524; Chicago, etc., Ry. Co. v. McBee, 145 Pac. 331; Chicago, etc., Ry. Co. v. Holliday, 145 Pac. 786; Louisville & N. R. Co. v. Woodford, 234 U. S. 46; Ry. Co. v. Rogers, 150 S .W. 281; Freeman v. Powell, 144 S. W. 1033; Pelton v. Ry. Co. 150 N. W. 236; Bradbury v. Ry. Co. 128 N. W. 1; Midland, etc., Co. v. LeMoyne, 148 S. W. 654; Ry. Co. v. Neaves, 127 S. W. 1090.

"Where the declaration did not aver that the defendant was doing interstate business, nor allege facts to show that the Federal act controlled the case, is to be decided by the state law." Hemick v. Ry. Co. 184 Ill. App. 275; Bradbury v. Ry. Co. 128 N. W. 1; Hein v. G. N. Ry. Co. 34 N. D. 440.

The Federal statute does not attempt to define negligence, and hence the question of what constitutes negligence will be determined by the state law. Ry. Co. v. Swamm, 169 S. W. 886; Helm v. Ry. Co. 160 S. W. 945.

The state law also controls as to the rules of evidence and procedure. Ry. Co. v. Leslie, 167 S. W. 83; Ry. Co. v. Holloway, 173 S. W. 343.

Under our law contributory negligence is no bar to a recovery of damages for injuries by an employee, and can only be considered by the jury in apportioning the damages. Comp. Laws 1913, § 4805; Peterson v. Ry. Co. (N. D.) 164 N. W. 42.

The trial court fully instructed the jury, under this state statute, and it was not necessary to further instruct. Cole v. Atchison, 139 Pac. 1177; Graber v. Ry. Co. 150 N. W. 489; Ry. Co. v. Strange, 161 S. W. 239.

Assumption of risk is a matter of defense which must be pleaded in order to entitle the defendant to an instruction on that point. Carr & Erickson v. Soo Ry. Co. 16 N. D. 217.

"A party cannot in a court of error avail himself of an omission of the trial court to instruct the jury upon a point in respect to which he asked no instruction." Frye v. Ferguson, 6 S. D. 392.

"The employee does not assume the risk of injury caused by the

master's negligence, where he had no knowledge of the existing danger." Meehan v. G. N. Ry. Co. 13 N. D. 432.

"It is error to submit to the jury issues on which there is no evidence." Douda v. Ry. Co. 119 N. W. 272; 13 Standard Proc. 792; N. D. Comp. Laws, § 4807; Federal Employers' Liability Act, § 6.

It is not error for the trial court to refuse to dismiss the action for failure of a nonresident to give security for costs, when such motion is made at the opening of the trial and without other notice. Bergh v. Wyman Farm Land Co. 30 N. D. 158.

A release of claim obtained by fraud may be avoided in an action at law, and a suit for damages maintained without first obtaining a decree in equity canceling the release. Clark v. N. P. R. Co. 36 N. D. 503.

Such releases are treated in the law as merely partial payments, and under proper instructions the jury, if it awards a greater amount by its verdict, may deduct or allow for in any other manner, the amount of the release, and render verdict for the net balance they may decide to give plaintiff. Hedlun v. Holy Terror Min. Co. 16 S. D. 261; O'Brien v. Ry. Co. 57 N. W. 425; 35 L.R.A.(N.S.) 660; Girard v. St. Louis Car Wheel Co. 25 L.R.A. 514.

The release here was not only voidable for partial failure of consideration, but was voidable on the ground of actual fraud. Actual fraud, among other things, consists of "a promise made without any intention of performing it, or any other act fitted to deceive." Comp. Laws 1913, § 5849; Tamlyn v. Peterson, 15 N. D. 488; Pollard v. McKenney, 96 N. W. 679; Cerny v. Pacton Co. 110 N. W. 882; Lawrence v. Gayetty, 78 Cal. 126; Langley v. Rodriquez, 122 Cal. 580.

In such cases as this one, misrepresentations on the part of the physician as to the nature and extent of the injuries will avoid a release. The concealment of a material fact is as fraudulent as a misrepresentation. Clark v. N. P. R. Co. 36 N. D. 503; Viallet v. Co. 5 L.R.A.(N.S.) 663, and note; Haigh v. Co. 50 L.R.A.(N.S.) 1091 and note; Jacobsen v. Ry. Co. 156 N. W. 251.

Where a person who is illiterate and does not understand the language in which a release is written, and did not know what he was signing, it is the duty of the person presenting such release or instrument for signature to fully explain its true contents and the meaning

of the same, and a failure to do so is evidence of fraud.   Christianson
v. Ry. Co. 69 N. W. 640; Peterson v. Butler Bros. 144 N. W. 407;
Lusted v. Ry. Co. 36 N. W. 857; Miller v. Ry. Co. 143 Pac. 981;
Bearden v. Ry. Co. 103 Ark. 341; Pierson v. Milling Co. 139 Pac.
394; Stanwood Co. v. Eain, 157 Ky. 623; Ry. Co. v. Nichols, 136
Pac. 159; Woods v. Wickstrom, 135 Pac. 192.

Although the amount paid for such a release may be very unfair
and unconscionable, this fact alone is not sufficient to avoid it; but it
is an evidence of fraud and is a proper question for the jury, and
their finding of a general verdict for plaintiff covers and includes a
finding upon such question.   Russell v. Coal Co. 70 S. W. 1; Kelly v.
Ry. Co. 114 N. W. 536.

Where a reply which has been improperly interposed is withdrawn
before the commencement of the trial, it is thereafter no part of the
case, and should not be referred to for any purpose.   Comp. Laws
1913, § 7452; Regan v. Jones, 14 N. D. 591; Erickson v. Elliott, 17
N. D. 389; America, etc., Co. v. Walton Co. 22 N. D. 187.

The release was a matter of defense, and it was not incumbent on
plaintiff to anticipate such defense and set it up in the complaint.
Trotter v. Association, 9 S. D. 596; Hedlum v. Holy Terror, etc., Co.
16 S. D. 261.

The respondent had the right to show the release was fraudulent
without raising the question by a reply, for none was necessary under
our statute.   Lyon v. Bank (S. D.) 89 N. W. 1017.

Where the main issue in a case is the question of fraud, evidence,
or any circumstance which tends to establish it, is proper.   Comp.
Laws 1913, § 5852.

The admission of improper evidence is harmless if the fact is after-
wards established by proper evidence.   38 Cyc. 1422, 1430, and cita-
tions.

The charge of the trial court must be considered as a whole.   Buchan-
an v. Machine Co. 17 N. D. 343; McBride v. Wallace, 17 N. D. 495.


CHRISTIANSON, J.   The plaintiff was employed by the defendant as
a section laborer.   On or about October 5, 1915, while in such employ,
he was injured by being thrown from a motor car.   This action was

brought by plaintiff to recover damages in the sum of $2,975, alleged to have been sustained by him by reason of the injury then received. The defendant, by answer, alleged affirmatively that plaintiff, for a valuable consideration paid to him by the defendant, settled and adjusted all claims and demands against the defendant on account of the alleged cause of action set forth in the complaint, and fully released and discharged the defendant from all liability thereon.

The evidence shows that some time after the accident the defendant's claim agent, one Mulcahy, entered into negotiations with the plaintiff with the result that plaintiff executed the following written release:

Know all men by these presents, that, In consideration of the sum of three hundred seventy-five and no/100 dollars, to me in hand paid by the Great Northern Railway Company, the receipt whereof is hereby acknowledged, have released, acquitted, and discharged, and do, by these presents, release, acquit, and discharge said railway company, its successors, and assigns of and from any and all liability, causes of action, costs, charges, claims, or demands of every name and nature, in any manner arising or growing out of, or to arise or grow out of, personal injuries received by me, at or near New Rockford, in the state of North Dakota, on or about the 5th day of November, 1915, while acting as a section laborer, I met with an accident and sustained personal injuries, or arising or to arise, out of any and all personal injuries sustained by me at any time or place while in the employ of said railway company prior to the date of these presents.

No promise of further employment has been made to me by said railway company as part consideration of this settlement and release, or otherwise.

In witness whereof, I have hereunto set my hand and seal this 27th day of December, A. D. 1915.

In presence of                                             Mike Swan.
    E. M. Watson,
    E. F. Mulcahy.

At the time of the execution of the release, the claim agent delivered to plaintiff a draft for $375, on the treasurer of the railway company.

The plaintiff indorsed and cashed the draft at one of the local banks and received $375 in cash. The draft was duly paid by the defendant in regular course of business. The plaintiff retained the money received, and has never returned or offered to return it to the defendant.

The witnesses all agree that during the negotiations between the plaintiff and the claim agent something was said with respect to plaintiff being continued in defendant's employ, but they differ as to what was said. They agree that plaintiff stated that he wanted employment, and objected to the clause in the release, which stated that no promise of future employment had been made to him by the railway company. They also agree that the claim agent stated that he could not permit this clause to be stricken out, as the company would not accept the release unless it contained this clause. The plaintiff, however, claims that the claim agent promised that notwithstanding such clause the defendant would give plaintiff a steady, light job as long as he could work; that it was by reason of and in reliance upon this promise and representation that he signed the release, and that he would not have signed it unless such representation had been made. The claim agent, on the other hand, contends that he made no promise that defendant would retain plaintiff in its employ, but merely stated that he (the claim agent) would use his personal influence to procure such job for the plaintiff.

The court submitted to the jury, among others, the question whether the defendant, with intent to deceive the plaintiff, induced him to execute the release by (1) a promise made without any intention of performing it; or (2) any other act fitted to deceive. Comp. Laws 1913, § 5849. The jury returned a verdict in favor of the plaintiff for $1,284. Judgment was entered pursuant to the verdict, and defendant appeals.

· The record shows that the defendant at the close of the testimony moved for a directed verdict of dismissal, on the ground, among others, that plaintiff had failed to return or tender a return of the consideration received, and consequently could not maintain the action. Error is predicated upon the denial of this motion. Defendant contends that plaintiff cannot maintain the present action without first having restored or tendered to the defendant the moneys received from the defendant as consideration for the execution of the release.

In our opinion defendant's contention is correct, and must be sustained. It is elementary that parties not under any disability to contract may enter into a valid agreement for the settlement of a controversy between them. The right to compromise controversies is recognized by the laws of this state. The only restriction placed on such right is that certain public offenses cannot be compromised. Comp. Laws 1913, § 11,077. A compromise and settlement when full and complete and fairly made operates as a merger of, and bars all right to recovery on, the claim or cause of action included therein. 8 Cyc. 516. In other words the compromise agreement is substituted for the pre-existing claim or right. The rights of the parties are measured and limited by the agreement. A compromise stands upon the same footing as other contracts. Either party may maintain suit to enforce it. And if procured by fraud the defrauded party may rescind it, if he elects to do so.

Under the laws of this state a party to a contract may extinguish the same by rescission in the following cases only: "1. If the consent of the party rescinding, or of any party jointly contracting with him was given by mistake or obtained through duress, menace, fraud, or undue influence exercised by or with the connivance of the party as to whom he rescinds or of any other party to the contract jointly interested with such party. 2. If through the fault of the party as to whom he rescinds the consideration for his obligation fails in whole or in part. 3. If such consideration becomes entirely void from any cause. 4. If such consideration before it is rendered to him fails in a material respect from any cause; or 5. By consent of all of the other parties." Comp. Laws 1913, § 5934. But "rescission when not affected by consent can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules: 1. He must rescind promptly upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence or disability and is aware of his right to rescind; and, 2. He must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so." Comp. Laws 1913, § 5936.

These statutory provisions seem to be decisive of this case. The

rules announced are plain and specific. They apply to all contracts. They permit a person who has been defrauded to rescind the contract to which his consent was obtained by fraud, but in order to rescind he must restore, or offer to restore, the consideration received on the condition that the other party shall do likewise, unless the latter is unable or positively refuses to do so. These rules are largely codifications of the common-law rules, and are founded upon elementary principles of justice. "One who has been led into a contract upon which he has received something of value cannot ignore the contract, however induced, and proceed in a court of law as if the relations of the parties were wholly unaffected thereby. He cannot, while retaining its benefits, and thus affirming the contract, treat it as though it did not exist. 'He cannot treat it as good in part and void in part, but must affirm or avoid it as a whole.'" Home Ins. Co. v. Howard, 111 Ind. 544, 547, 13 N. E. 103, 104. A contract induced by fraud is voidable at the option of the defrauded party. He has, upon discovery of the deceit, the option of either rescinding or affirming the transaction. He must do one or the other. He cannot do both. He cannot rescind in part and affirm the remainder. Guild v. More, 32 N. D. 432, 455, 155 N. W. 44. He cannot at the same time be permitted to abrogate the contract and retain the benefits he has received under it. Beare v. Wright, 14 N. D. 26, 31, 69 L.R.A. 409, 103 N. W. 632, 8 Ann. Cas. 1057; Black, Rescission & Cancellation, §§ 561 et seq. If he desires to rescind he must comply with the provisions of the statute, and restore or tender what he has received as consideration for the contract, on the condition that the other party shall do likewise, unless the latter is unable or positively refuses to do so. To rescind is to abrogate, annul, avoid or cancel—in other words to undo—a contract. "The term 'rescission,'" says Bishop (Bishop, Contr. § 679), "denotes the avoiding of a voidable contract." The word "rescission" has a well-defined meaning in law, and includes the idea of restoration of both parties to their *status quo,* and return by each to the other of the consideration given and received (4 Words & Phrases, 2d Series, 328). As was said by this court in Raymond v. Edelbrock, 15 N. D. 231, 107 N. W. 194: "Rescission of a contract is the act of canceling it by restoring the conditions existing immediately before it was made. Rescission is effected by each party returning to the other what has been

received pursuant to the contract or its equivalent." Not only is the party who seeks to be relieved from a contract voidable for fraud required to put the other party back in his original position, but ordinarily, "the contract can only be rescinded where it is possible to put the parties back in their original position and with their original rights." 9 Cyc. 437, 438. "A contract induced by fraud is voidable not because of any supposed pecuniary damage done to the defrauded party, but because the consent of the latter was not free." Beare v. Wright, 14 N. D. 26, 69 L.R.A. 409, 103 N. W. 632, 8 Ann. Cas. 1057; Crane & O. Co. v. Sykeston School Dist. 36 N. D. 254, 259, 162 N. W. 413. And such voidable contract does not become binding upon the defrauded party unless, with knowledge of the fraud, he ratifies or affirms it. In case of rescission, "the contract ceases to exist for any purpose, and the parties stand in the same position as though it had never been made, and hence, it is necessary that they be placed in the same position in which they were before the transaction took place. Therefore the party defrauded, in such case, is entitled to recover back whatever consideration he parted with, but he must also return or offer to return to the other party whatever he received. In case of affirmance, he retains what he received, and is entitled to be compensated for the damages he sustained by reason of the false representation. That is, the wrongdoer will be compelled to pay damages equal to the difference in value between what he gave and what he represented he would give. . . . The transaction may be affirmed either expressly or by implication. And a person who retains as his own the property which he received in the transaction will necessarily be deemed the owner thereof. And, having elected to assume the position of owner, will be compelled to abide by the selection made, and to be not only invested with the rights and prerogatives, but also burdened with the duties and liabilities, incident to such ownership. Hence, in such case the measure of damages for the fraud and deceit practised upon him is very properly predicated upon the basis that the defrauded party is the owner of the property, and therefore his damage is equal to the difference in value between the property he received and what he would have received if the representations had been true." Guild v. More, 32 N. D. 432, 454, 455, 155 N. W. 44.

"It is well settled by repeated decisions of this court," said the Su-

preme Court of the United States (Shappirio v. Goldberg, 192 U. S. 232, 48 L. ed. 419, 24 Sup. Ct. Rep. 259), "that where a party desires to rescind upon the ground of misrepresentation or fraud, he must upon the discovery of the fraud announce his purpose and adhere to it. If he continues to treat the property as his own the right of rescission is gone, and the party will be held bound by the contract. Grymes v. Sanders, 93 U. S. 55, 23 L. ed. 798; McLean v. Clapp, 141 U. S. 429, 35 L. ed. 804, 12 Sup. Ct. Rep. 29. In other words, when a party discovers that he has been deceived in a transaction of this character he may resort to an action at law to recover damages, or he may have the transaction set aside in which he has been wronged by the rescission of the contract. If he choose the latter remedy, he must act promptly, 'announce his purpose and adhere to it,' and not by acts of ownership continue to assert right and title over the property as though it belonged to him." We are aware of no rule or reason which would justify us in refusing to apply these rules in dealing with compromises and releases. We believe that they are fully as applicable to those as to other contracts. See Urtz v. New York C. & H. R. R. Co. 137 App. Div. 404, 121 N. Y. Supp. 879; Duquette v. New York C. & H. R. R. Co. 137 App. Div. 412, 121 N. Y. Supp. 876; Strong v. Strong, 102 N. Y. 69, 5 N. E. 799; Home Ins. Co. v. Howard, 111 Ind. 544, 13 N. E. 103.

Respondent has cited several cases in support of the general proposition that it is unnecessary to return or tender the consideration received for a release obtained by fraud, as a condition precedent to the maintenance of a suit for damages, but that the amount received may be deducted from the verdict, if one is obtained against the defendant. The decisions cited by the respondent are by no means the only judicial expressions upon the subject. On the contrary, there is a square conflict in the decisions. A large, and probably the larger, number of modern decisions announce a doctrine contrary to that contended for by respondent, and support a rule in harmony with the conclusions we have reached in applying the provisions of our statute. See 34 Cyc. 1071; Charron v. Northwestern Fuel Co. 149 Wis. 240, 49 L.R.A. (N.S.) 162, 134 N. W. 1048, Ann. Cas. 1913C, 939; Burns v. Reading, 188 Mich. 591, 155 N. W. 479.

As already stated a release is a contract, and where a person with

full understanding of the character and nature of the instrument executes a release, and receives a consideration therefor, there is no more reason why he should be excused from returning or tendering a return of the consideration received than in other cases where a rescission is sought.

"It is elementary," said Corliss, J. (McGlynn v. Scott, 4 N. D. 18, 21, 58 N. W. 460), "that the courts look with the highest favor upon every honest adjustment of private differences." For compromises and settlements tend to diminish litigation and promote the repose of society. And "the law loves peace, and hates dissensions and turmoils, and its policy and maxims are against their being revived or unnecessarily prolonged." Kercheval v. Doty, 31 Wis. 476, 484.

The doctrine, announced by some of the courts, and for which respondent contends, would distinctly tend to discourage and prevent the compromise of controversies, and to increase litigation. Under the rule contended for, a party who has compromised a disputed, unliquidated claim may retain the money received under the compromise agreement and prosecute an action upon the claim which formed the subject of the compromise agreement. In fact he may use the very moneys which he received as a consideration for the compromise to prosecute the subsequent action. He is permitted to deny the validity of a contract and at the same time retain the benefits which he has received under it. The rule contended for seems illogical and unsound.

As was well said by the supreme court of Kentucky in Louisville & N. R. Co. v. McElroy, 100 Ky. 153, 37 S. W. 844: "Either the company paid the money to avoid the risk of a greater damage being awarded against it in the event of litigation, or it paid the money in the belief that the expense of the litigation, though it defeated a recovery, would amount to as much or more than the sum paid. It sought to buy its immunity from damages and expense of having the question of its liability determined. It is not reasonable to suppose that the company would have paid the money if the right of the plaintiff still existed to maintain his action upon the original cause of action. There is no pretense that the company paid its money as a credit on its supposed liability. It paid it to extinguish its liability, if such existed. If, upon the trial of the case, the verdict had been for the

company, because the injury was not the result of the gross negligence of the foreman or the party operating the engine, then the plaintiff would have the money and the company the expense of the litigation which it sought to avoid, and the court powerless to enforce a return of the money. This statement illustrates the correctness of the well-recognized rule which requires a repayment or a tender of the money before bringing the action." Some courts, while recognizing the correctness of the general rule that in order to effect rescission, the rescinding party must place the other party *in statu quo* by returning or tendering a return of whatever consideration he has received under the agreement, and the applicability of this rule to compromises and releases, have also recognized certain exceptions to the rule.

Thus, it has been held that the consideration need not be returned in order to effect a rescission and entitle the defrauded party to maintain an action upon the original claim: (1) Where a tender would have been useless, or where the thing is utterly worthless; (2) where there may be a severance of one part of the contract, in which event a partial rescission is sometimes allowed in the interests of justice; (3) where the plaintiff was entitled to receive the consideration irrespective of the assent got by its delivery to him, as where the liability of the debtor and the amount of the claim are conceded and the creditor agrees to release upon receiving payment of an amount less than what is conceded to be due; (4) where the very existence of the compromise or release is denied, and there was in fact no contract created,—as where a release is misread to the releasor, or where there is a substitution of one paper for another, or where a party is tricked into signing an instrument which he did not intend to execute.

The cases which fall within the fourth exception proceed upon the theory that the effect of fraud upon a contract and the rights and obligations arising thereunder, including the necessity of returning the consideration, depend upon the nature of the fraud. These cases divide fraud into classes:

(1) One class of fraud goes to the very existence of the contract, as where a release is misread to the releasor, or where one paper is surreptitiously substituted for another, or where a party is tricked into signing an instrument which he did not intend to execute. In such cases the minds of the parties did not meet upon, and there was

no consent whatever by the defrauded party to, the ultimate propositions purported to be covered by the contract, and the consideration received by the defrauded party was not received for consenting to the terms of the alleged contract, but for his consent to entirely different propositions. In such cases it is not a question of a contract voidable because the consent to its terms was not free and mutual, but there was no consent whatever. In other words, it is held that it is not a question of a contract voidable for fraud, but a question of no contract at all.

(2) Another species of fraud goes to the representations, or means, used to induce a party to enter into the contract. In such cases the party knows the character of the instrument which he signs, and intends when he signs and delivers it that it shall have the purpose and effect which the law imputes to it. In such cases the minds of the parties have actually met upon the ultimate propositions contemplated by them and evidenced by the contract, but the contract is voidable for the reason that the consent of the defrauded party to its provisions was obtained by false and fraudulent representations, such as false statements as to the nature and value of the consideration, or as to the extent of his injuries, or other material matters. The cases referred to, which recognize and discuss this distinction between the two classes of fraud hold that with respect to the first class it is not necessary to return or offer to return the consideration before maintaining an action upon the original claim. But that in cases involving fraud of the second class, the consideration must be returned or tendered in order to maintain an action upon the original claim. One of the foremost courts in the country which has recognized this distinction is the supreme court of Massachusetts. And this distinction was pointed out by that court in the case of Mullen v. Old Colony R. Co. 127 Mass. 86, 34 Am. Rep. 349. In that case the court, after recognizing the rule that it was necessary to return the consideration received for a release before the releasor might institute an action on the original demand, says: "The principle on which these decisions rest is just; but it applies to those cases only where that which was received, and which must be returned, was the consideration of the contract or settlement which the receiver intended to make, and understood that he was making, and which he seeks to avoid by reason of fraudulent

practices of the other party which led him to agree to its terms. It does not apply to cases where a party holds out that he gives the consideration for one thing, and by fraud obtains an agreement that it was given for another thing." (The correctness of this distinction has been questioned by other courts. See Rockwell v. Capital Traction Co. 25 App. D. C. 98, 4 Ann. Cas. 648.) It is unnecessary for us in this case to either approve or disapprove of these holdings, for the instant case does not fall within any of these exceptions.

The defendant raised the question of the necessity of a tender or restoration of the consideration at the earliest opportunity upon the trial, and continued to urge it until the last. There is nothing to indicate that an offer to restore the consideration would have been refused. It cannot be said that a tender would have been useless.

In this case the compromise affected on right of action only; there was no room for severance.

The claim involved was an unliquidated one. The liability of the defendant was by no means conceded. The evidence shows that during the negotiations between the claim agent and the plaintiff different offers and counter offers were made. The plaintiff demanded a larger cash consideration than was finally paid, and the claim agent offered a lesser one. They finally agreed upon the terms of the settlement. And while there is a dispute as to some of the terms, there is no dispute as to the amount of cash consideration agreed upon. It is undisputed that this was fixed at $375, and that it was paid to the plaintiff, and that he has retained it ever since, and has at no time restored or offered to restore it to defendant.

It is undisputed that at the time plaintiff received the money he executed the written release. "It is further undisputed that this release was carefully read over to the plaintiff before he signed it. He was not deceived as to its contents or its purpose. He knew that its purpose and effect was to release and discharge his right of action against the defendant. He signed the very instrument which he intended to sign." If his signature to the release was obtained by means of fraud and deceit the law affords him ample remedy. However, he

40 N D.—18.

has no right to retain that which he received as consideration, and repudiate the remainder of the contract.

The judgment appealed from is reversed, and the cause remanded for further proceedings in conformity with this opinion.

GRACE, J. I concur in the result.

ROBINSON, J. (concurring). This is a personal injury case. Defendant appeals from a judgment for $1,284. As a section hand in the employ of defendant, plaintiff was on a gasolene motor which ran into an open switch so he was thrown to the ground and severely injured. Some two months after the injury a settlement was made with defendant and he signed a release for $375, which he received and retained. It is claimed that in part consideration for the release the company contracted to retain the plaintiff in its services at some easy job, and then in six weeks discharged him without cause. If that be true, of course the plaintiff may recover damages for the discharge, and his right of action is not barred by a sharp clause in the release that the company made no promises of future employment. Plaintiff did not read, and he could not read, the release, and it does not bar him from recovering damages in case he was wrongfully discharged.

However, it is certain the plaintiff received $375, and for that sum and such promises, if any, as the company made to him, he knowingly signed the release of any claim for the injury, and he received and retained $375. Were he at liberty to do that and then to sue for damages in the same manner as if he had never made a contract of release, then no force or effect may be given to any such contract. For a settlement and release amounts to nothing if it has no validity, and the right to make a valid settlement is a valuable privilege. A bird in the hand is worth two or three in the bush. A dollar without a damage suit is worth several dollars at the end of the suit.

The release is a contract, and under the plain words of the statute the plaintiff was not at liberty to repudiate it without returning or offering to return the consideration. Were it otherwise, a party injured might accept any offer as a settlement and then bring suit for damages without any risk of losing the money received. Then no person of common sense would pay out good money for a settlement which

would only put him at a sure and certain disadvantage in a suit for damages. To every man the right to make a valid contract is of great value. The right should not be denied to the poor and illiterate by treating them as children and giving no force or effect to their contracts.

The questions arising in regard to the pleadings are of minor importance. If the $375 had been returned to and received by the company, the complaint might well have ignored the settlement. Otherwise the complaint should have stated the contract of release, and the grounds of rescission, and a proper offer to rescind and to return the purchase money, with payment of the same into court.

Judgment should be reversed and case dismissed.

## On Petition for Rehearing.

CHRISTIANSON, J. Plaintiff has filed a petition for a rehearing. In such petition he contends that "the statutory provisions referred to in the opinion as to the necessity of returning the consideration before suit do not apply in this case, but apply particularly to actions for rescission and cancelation of contracts." We are unable to agree with this contention. These statutory provisions, by their express terms, apply to all contracts. They are provisions of substantive, and not of adjective, law. They relate to the right, and not to the remedy. They apply not only in suits for rescission or cancelation of contracts, but in any suit wherein the question arises whether a contract has been rescinded or remains effective. It seems self-evident that when a cause of action has been settled, it is extinguished and merged in the contract of settlement. If such contract is valid, it concludes the right of the parties for all time. And if it is voidable for fraud, there is no reason why the party who seeks to avoid it should not do what the law requires to be done by one who seeks to avoid a fraudulent contract.

Plaintiff again argues that this court ought to adopt the rule that a party who seeks to repudiate a settlement for personal injuries may be permitted to sue upon the original cause of action without returning or tendering the consideration received, and that by allowing credit upon the verdict the same purpose is accomplished. In this connection, he argues that the payment of a consideration for a release

constitutes an implied admission of liability by the party who makes the payment. And in the instant case it is asserted that "there was an implied admission of liability to the extent of $375." And that "the amount so paid is conceded to be due, whatever the result of the litigation." While the theory just advanced has been suggested in one of the cases dealing with this subject, it is, in our opinion, entirely unsound. The law favors settlements and compromises. And an offer of compromise by a party who attempts to purchase peace in a controversy is privileged, and does not constitute an admission against the party who makes the offer. 1 Enc. Ev. 596, 599. It is well known to every practising attorney that compromises and settlements are by no means limited to cases wherein liability is unquestioned, but they are at least as, and probably more, frequently effected in cases where liability is doubtful or nonexistent. The cases are by no means infrequent wherein a party deems it better and less expensive to buy his peace than to be put to the trouble and expense of a lawsuit, even though no liability exists. Clearly, the fact that a compromise has been effected and one party has paid a consideration to the other should not be deemed an admission of liability on the part of the one who paid the consideration, where the party who received it seeks to repudiate the contract of settlement under which the consideration was paid.

It is next contended that, inasmuch as the defendant pleaded the release as a defense, an offer to return the consideration received by the plaintiff for the release would have been useless. In other words, it is asserted that the defendant, by pleading the release, waived the necessity of a tender. This contention is without merit. Under the Code, a release is an affirmative defense of new matter, which must be specially pleaded in order to be available. 18 Enc. Pl. & Pr. pp. 89, 90; 34 Cyc. 1094; Comp. Laws 1913, § 7448. If plaintiff's contention is sustained, it will lead to this result; a defendant who is sued upon a cause of action which has been released must plead the release or he will be precluded from introducing the release in evidence; but if he pleads the release in defense, he waives a return of the consideration on the part of the party who executed and seeks to avoid the release. A bare statement of the contention demonstrates its unsoundness.

The plaintiff also contends that we were in error when we stated

in the former opinion "that this release was carefully read over to the plaintiff before he signed it. He was not deceived as to its contents or its purpose. He knew that its purpose and effect was to release and discharge his right of action against the defendant. He signed the very instrument which he intended to sign." It is true, plaintiff in answer to leading questions put to him by his counsel stated that he did not know the contents or meaning of the instrument which he signed.

But while examined by his own counsel he also testified:

Q. Mr. Swan, who called you down to the doctor's office at the time you made this *settlement with the company?*

A. Claim agent. . . .

Q. Did you have any talk about *the settlement* in Doctor Watson's office before Rodenberg came in? On the day *the settlement* was made?

A. Yes, sir. . . .

Q. Now that was the same day of *the settlement,* or the same day *the settlement* was made, at the time you signed the papers?

A. Yes, sir.

(The plaintiff, thereupon, testifies to the effect that the claim agent called Rodenberg, the interpreter.) He further testified:

Q. The claim agent first talked to Rodenberg and then what did Rodenberg say to you?

A. I wanted more money than the claim agent would give to me.

. . .

Q. What did Rodenberg then tell you?

A. There was $50 between us, and the claim agent said, "Let's split that $50," and I said "All right."

During the course of plaintiff's cross-examination the court propounded this question: "How did you happen to be talking about that (the matter of a job)?"

Plaintiff answered: "I wanted to get $600 and a light job and they just jewed me down to $375 and a light job."

He further testified:

Q. *At the time that you got this $375 and signed this release you knew you were settling with the company?*

*A. Yes.*

Q. You knew at the time you settled you had the rupture, didn't you?

A. Yes, sir.

Some reference is also made in plaintiff's testimony to the effect that he wanted the claim agent to give "it on black and white," and that in reply the claim agent "knocked on his breast" and said, "I am standing good for it, that you get a light job."

The claim agent, Mulcahy, testified:

I think I went to Mr. Swan's house and he came to doctor's office with me, or we telephoned, either one of those. We had had some previous conversation regarding a settlement, and he wanted on that day $500, but I told him I couldn't pay him that. I offered $300 and to pay the doctor's bill and buy him a truss and also for an operation if he wanted it. He stated he didn't want an operation, so we finally got down to business and he accepted $375.

Q. Was Mr. Rodenberg present?

A. Yes, sir.

Q. Were you talking to Mr. Rodenberg in English and then he would translate it to Swan, then Swan talk to him and Mr. Rodenberg translate back to you?

A. Yes.

Q. And as you talked about all the conversation took place between you and Mr. Rodenberg, the interpreter?

A. Yes, he was acting as interpreter for Swan.

Q. Do you recollect the testimony of Mr. Rodenberg as to a light job?

A. Yes, sir.

Q. Do you recollect just what the conversation was about the job; how it came up?

A. When Mr. Rodenberg was reading the release to him and explaining it to him, and when he came to where it states, There is no promise for future employment to have been made as a part consideration of the release, Swan objected to that part and asked if I couldn't leave that out, and I told him, "no," the company wouldn't make any promises of any future employment whatever; that it had to be just

as the release was, but I, myself, would use my influence to see he got a job.

Rodenberg, who acted as interpreter between the claim agent and the plaintiff at the time the release was executed, testified as follows:

Q. Was there anything said, Mr. Rodenberg, by Mr. Mulcahy and interpreted by you to Mr. Swan as to whether or not the company would put any provisions in this settlement as to a job?

A. Yes, there was something said.

Q. What was said?

A. *The claim agent said he couldn't put it in the release. He couldn't put anything in the release about the job.*

Q. Did he say why he couldn't?

A. He said the company wouldn't accept the release.

Q. What did Mr. Mulcahy say to Mr. Swan and what did Mr. Swan say back?

A. Swan said he wouldn't sign the release if no job was put in.

Q. What did the claim agent say?

A. He couldn't put it in the release, but he would get him a job.

Q. What was said next?

A. Swan, he doubted it, he would like to have it in black and white, and the agent says he couldn't do it, as the railway company wouldn't accept the release, and he promised him a job again absolutely.

Q. What did he say that made you think that?

A. He said, knocking his breast, I will see you get a job.

Q. Did you interpret that to Swan?

A. I did.

When all this testimony is considered and the most favorable construction placed upon plaintiff's testimony, it seems clear that reasonable men can reach only one conclusion; namely, that he was well aware of the transaction in which he was engaged. He knew that he was making a settlement for his personal injuries. Offers and counter offers were made. He signed an instrument, the purpose and effect of which was to complete the settlement. He knowingly received $375, stipulated as a consideration, and this he has kept and never offered to return. We are entirely satisfied that the instant case falls within the rule announced in our former opinion, that a party who repudiates

a settlement for personal injuries because of fraud and sues upon the original cause of action must return or tender a return of the consideration received. And "it is no answer to the objection that the money has not been returned, or offered to be returned, that the amount received by the plaintiff under the release has been discounted from the verdict. Suppose the verdict had been found for the defendants, because of insufficient proof of negligence on their part, or because of contributory negligence on the part of the plaintiff, what would have been the predicament of the defendants in respect to the money paid under the release? Clearly they could have no recourse to recover it back from the plaintiff. The plaintiff cannot be allowed both to affirm and disaffirm, according as the case may terminate; he cannot affirm for what he has received, and disaffirm and repudiate the release as to the difference between that amount and what he might expect to recover by the verdict of the jury. He must disaffirm and rescind the release *in toto,* if the facts justify him in so doing, and return or offer to return what he has received under it." Lyons v. Allen, 11 App. D. C. 543, 552.

It is suggested that the decision deprives plaintiff of all remedy for the fraud alleged to have been practised upon him by the defendant. The suggestion, while not material, is incorrect. Even though it be true (as plaintiff assumes) that it is now too late to tender or return the consideration and sue upon the original cause of action (and upon this question we express no opinion), the plaintiff still has the right to maintain an action for the deceit which he claims was practised upon him, and, if he prevails in such action, he will receive all the relief to which he is justly entitled.

A rehearing is denied.

GRACE, J. I concur in the result.